# Seeley *versus* Garey.

1. On April 21st, 1880, under written articles of agreement, A. bought a tract of land from B., with the right to immediate possession. B. reserved the sawing timber in case A. should fail to manufacture it as provided by the agreement. A. agreed to manufacture a specified quantity per annum, the price to be applied on the purchase money and the timber to vest in A. upon payment of the price in the manner set out. A. took possession and proceeded with his contract, carrying out

the terms thereof. While so doing, October 7th, 1880. he agreed in writing to sell to C. " all the sawing timber," with the right in C. to enter and take the same as soon as peeled by A., for which C. agreed to pay, in cash and monthly instalments, as specified in the contract. C. also agreed upon non-performance of the terms of the contract A. should have the right " to resume possession of the premises and treat C. as a tenant holding over after the expiration of a lease." Under this contract C. took possession of the timber already cut by A. and performed his part of the contract until August 1881, when he failed, and his execution creditors levied on said timber. C. thereafter ceased to perform his part of the contract with A. and the latter got judgment against him, notified him that the agreement was at an end and took possession of the premises. B. notified the sheriff that he claimed the timber levied on, and an interpleader suit in which A. & B. were plaintiffs and C.'s execution creditors defendants, resulted in judgment for the latter. D., who had knowledge of the claims against said timber, purchased the same at private sale from C., bought the claims of C.'s execution creditors, and then brought replevin against A. for the timber cut by him and delivered to C. under the contract between them : *Held,*

(1) That the sale and delivery by A. to C. under their contract, of the sawing timber then cut, conveyed the absolute ownership thereof to C., and that the jury were properly so instructed by the court. On the trial, D. offered in evidence the contract between A. & C. and the record of A.'s judgment against C. to be followed by proof that the timber in suit was that included in the contract, and that C. sold the same to D. after the entry of that judgment. This for the purpose of showing that A. had made his election of remedy under his contract before C. sold to D. D. also offered the record of the interpleader suit, for the purpose of showing that the ownership of said timber had been formally adjudicated thereby, and found to be in C.

(2) That although the admission of this evidence, for the purposes for which it was offered was error, yet it was not sufficient ground for reversal, because the case was put on the proper ground before the jury, by the instruction of the court above noted.

(3) That under the circumstances it was immaterial whether A. gave C. notice of the forfeiture of the contract between them first, or whether he ordered his execution against C. returned before giving such notice and that evidence as to this was properly excluded.

March 16th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY and CLARK, JJ. STERRETT and GREEN, JJ., absent.

ERROR to the Court of Common Pleas of *Sullivan county :* Of July Term 1884, No. 24.

Replevin, by W. C. Garey against O. A. Seeley to recover certain sawed lumber and hemlock logs.

On the trial, before INGHAM, P. J., the following facts appeared : By an agreement dated April 21st, 1880, Thomas L. and Wm. P. Smull sold to O. A. Seeley a certain tract of land. The agreement after describing said land and providing for the execution of a deed upon compliance with its terms, continued as follows :

"It is further agreed, on the part of said Seeley, that he will peel and deliver on the cars at Dushore, in Sullivan

[Seeley v. Garey.]

county, Pa., for said first party, six thousand tons of hemlock
bark as follows: Two thousand tons to be delivered in the
year 1880, two thousand tons in the year 1881, and two thou-
sand tons in the year 1882; the bark to be delivered between
the 1st of June and December first of each year, said first
party to pay second party four dollars per ton for bark deli-
vered as aforesaid—three dollars per ton to be paid on the
delivery of said bark, or as soon as the same is weighed or
measured at the Athens tannery, in Bradford county, Pa.; one
dollar per ton for all bark sold in the woods to be retained by
said first party and applied on the purchase price of the land
mentioned in this contract, the credit of one dollar per ton to
be made on the first day of each December, beginning with
December, 1880.

"Second party agrees to begin the delivery of said bark in
June of each year, and to deliver a reasonable portion of each
two thousand tons each month up to the 1st of December of
each year. And, whereas, said first party from time to time
are to advance a sufficient amount of money to said Seeley to
enable him to peel and deliver the bark before mentioned; there-
fore said first party reserve to themselves all the sawing timber
on said lot with the right to cut and manufacture the same into
lumber in case the said Seeley fails or neglects to manufacture
the same as hereinafter provided. The said Seeley has the
right to manufacture the timber into lumber providing the
same is done on said lot, and on paying to said first party the
sum of seventy-five cents per thousand for lumber so manufac-
tured, then the title to said lumber is to rest in said Seeley,
and he has the right to remove the same from said premises.
He is to manufacture at least fifteen hundred thousand per
year, and the said sum of seventy-five cents per thousand is to
be applied on the purchase price of said land and advancements
above stated by said first parties, and all mills and buildings
built, placed, or constructed on said lot by said Seeley for the
purpose of manufacturing lumber are to become and remain a
part of the realty so long as any portion of the purchase
money of said land or advancements so made on any part
thereof remains unpaid." In pursuance of this agreement
Seeley took possession of the land, cut, and peeled hemlock
trees, delivered the bark to the Smulls, built a saw mill and
began the manufacture of lumber. Subsequently, on October
7th, 1880, Seeley executed an agreement with one Thomas J.
Jordan, by which he agreed to sell Jordan "all the sawing
timber" on the said tract of land, and granted him the right
"to enter upon the lands and get said timber as fast and when
the same has been peeled," Jordan not to take timber from
any part of the land except "where the hemlock has been

peeled," to have the right to use the mill for the manufacture of lumber, and to pay Seeley $7,000 for his privileges—$600 upon the signing of the agreement and $100 per month from December 1880 until August 1881, and $150 per month thereafter until the $7,000 was paid. Seeley reserved to himself all the hemlock bark and agreed to peel about 2000 cords per year. The agreement further provided that if Jordan should fail to perform any of his covenants, or to make payments as provided; after 30 days the agreement should become void at the option of the said Seeley who could immediately resume possession and treat Jordan as a tenant holding over after the expiration of a lease, and the unpaid consideration should at once become due and payable and the interest of Jordan in the agreement at once cease.

Jordan paid the $600 hand money, and operated the mill under this contract from October 7th, 1880 until August 1881, paying the $100 per month as stipulated.

On August 11th, 1881, Jordan having failed, the sheriff, upon executions issued by F. B. Pomeroy and others, levied upon certain logs and lumber, part of the timber cut and peeled by Seeley and delivered to Jordan under the contract. Seeley entered judgment against Jordan on his contract, to No. 53 September Term 1883, notified Jordan that owing to his failure to perform his covenants, his right under the contract had ceased—whereupon Jordan went out and delivered up possession to Seeley. Smull Brothers meantime notified the sheriff that they claimed the property levied upon.

An issue was formed under the Sheriff's Interpleader Act, wherein the Smulls, F. T. Page their grantee, and Seeley were plaintiffs, and F. B. Pomeroy and other creditors of Jordan were defendants. This issue resulted in a verdict for the defendants and the judgment thereon was subsequently affirmed by the Supreme Court. Meantime W. C. Garey, purchased the lumber in controversy from Jordan at private sale and with full knowledge of the claim made by the Smulls and Seeley. Subsequently Garey purchased Pomeroy's judgment, and brought this action of replevin against Seeley, who was then in possession, for the lumber in question which was part of that cut by Seeley before making his contract with Jordan.

The plaintiff offered in evidence the contract between Seeley and Jordan " and files in case No. 53, September Term, 1883, O. A. Seeley *vs.* Thomas J. Jordan, to be followed by evidence that the property now in dispute between W. C. Garey and O. A. Seeley is a portion of the same property described in the contract of O. A. Seeley with T. J. Jordan; also, with evidence that T. J. Jordan has sold this property to W. C. Garey, the plaintiff in this suit, since the entry of that judgment, and

[Seeley v. Garey.]

the files are offered for the purpose of showing that the contractor, O. A. Seeley, had made his election of remedy under the contract; that this property was sold by T. J. Jordan to W. C. Garey since the entry of judgment upon the case No. 53, September Term, 1881, and before the bringing of this suit of replevin."

" Defendant objects to the offer upon the ground that the evidence if true cannot affect the interest of these defendants in this property, and that the evidence is immaterial in this issue, the suit not being between the original parties to that contract nor their privies; that it cannot affect the rights of these defendants."

The court: " The evidence is admitted." Exception—(First assignment of error.)

Plaintiff then offered in evidence the record in the suit under the Sheriff's Interpleader Act, " For the purpose of showing that the defendants in the interpleader suit were creditors of T. J. Jordan, and levied upon the property sold to Jordan by Seeley in the contract already in evidence; that the sheriff made application to the court for the benefit of the Interpleader Act to determine who were the owners; that the question of ownership of said property was tried and a verdict rendered by which it was found that the logs and lumber were the property of T. J. Jordan, and for the purpose of showing that the ownership of the property in the writ of replevin has been and was formerly adjudicated between the parties to this action." Objected to as irrelevant. Evidence admitted. Exception. (Second assignment of error.)

The defendant offered to ask Seeley the following question :. Q. " Whether or not on the 13th of September, 1881, or about that time, you caused notice to be served upon him (meaning Jordan) that his contract was forfeited, or anything of that kind ?"

" Plaintiff objects to the question that the contract already in evidence shows that Seeley had exercised his option upon the contract. After having exercised that option he had no right to take any other course in the matter."

THE COURT: " On the 13th of September, 1881, when the notice offered in evidence was alleged to have been given to Jordan, the personal property which he had purchased from Seeley was in the hands of the sheriff on a levy, and Seeley was one of the execution creditors, having in the hands of the sheriff an execution to collect the balance due him from Jordan by levy and sale of that very property. He could not then legally enter and re-possess that property, and, therefore, his notice given to Jordan is not relevant evidence in this case. In rejecting the evidence of Seeley's notice to Jordan we do

13 OUTERBRIDGE—20 .

not reject such evidence as may be offered to show a voluntary surrender by T. J. Jordan to O. A. Seeley of the personal property in dispute at any time when he had the right to surrender it. Exception noted for defendant at whose request a bill is sealed." (Fifth assignment of error.)

Defendants then renewed this offer, with addition, "to prove by the witness on the stand that his execution referred to against T. J. Jordan, there was no levy made upon it, and was ordered by the witness to be returned before the 13th day of September, 1881."

*Mr. Dunham:* "Plaintiff objects to the offer as immaterial and irrelevant, and improper evidence in this case, there being no return by the sheriff showing that the plaintiff ever attempted to relinquish any rights under that *fi. fa.*"

*Mr. Maynard:* "That is our reason; we have a right to prove it, because nothing was ever done with it."

THE COURT: "The court record shows that Seeley's execution was not returned stayed by the plaintiff, and it remained in the sheriff's hands with all legal rights pertaining thereto until the return day on the 26th of September. Parol testimony to contradict the record is inadmissible, and for this and the reason already given, the evidence is not admitted." Exception. (Sixth assignment of error.)

The defendants submitted *inter alia*, the following point: "That the contract between O. A. Seeley and Thomas J. Jordan, dated October 7th, 1880, was an executory contract; that an executory contract for the sale of personal property does not pass the title without delivery and full performance of all its terms, and replevin will not lie to enforce the terms of the contract."

Answer.—"By the terms of the contract between O. A. Seeley and T. J. Jordan, Seeley sold to Jordan the steam sawmill, and all the sawing timber on the said land, with the right to enter upon said land, and get the timber when the same was felled, for which Jordan agreed to pay cash at times certain. The delivery of the possession of the said sawing timber already cut down and felled by Seeley to Jordan in accordance with the terms of their contract conveyed to Jordan the absolute ownership of the down timber so delivered. The portion of the contract unexecuted was executory, but non-performance of the future conditions could not divest Jordan's right of property in the timber actually delivered to him by Seeley." (Thirteenth assignment of error.)

Verdict for plaintiff and judgment thereon, whereupon the defendants took this writ assigning for error the admission and rejection of evidence, and the answer to their point, as above set forth.

[Seeley v. Garey.]

*Maynard* (with whom were *Evans*, *S. W. Little*, *Rush J. Thomson* and *John Cronin*), for plaintiffs in error.—The first question raised by the specifications of error is the admission of records in case of Seeley *vs.* Jordan, for the purpose of showing that Seeley had elected to proceed against Jordan by judgment and execution, and consequently could not retake possession of the property. The fact is not disputed that in August, 1881, Jordan abandoned the mill and all business connected with the property mentioned in the Seeley and Jordan contract, and the evidence all shows that he has treated the contract as at an end since August, 1881.

The abandonment of the contract by Jordan was a forfeiture. His leaving the premises and not offering to comply with the contract by paying the monthly payments was an abandonment of the contract, and if Seeley took possession after Jordan had left, and Seeley was the vendor of Jordan as is claimed by the plaintiff in this case, then Jordan could not recover in any form of action until he had complied or offered to perform his covenants and agreements. Garey can rise no higher than Jordan. Jordan was to make monthly payments to Seeley. We say that each monthly failure to comply with the contract was a ground of forfeiture, and if Seeley had no right to forfeit the contract in August, he certainly had the right to do so for a subsequent breach in September, 1881.

It was also error to admit the record in the Interpleader suit. The issue in that case was between Smull, Page and Seeley, plaintiffs, and Garey and others, defendants—the defendants being execution creditors of Jordan; and that issue only settled the fact that the execution creditors had the right by virtue of levies made August 10th, 1881, to sell the property as Jordan's, and that the sheriff would not be liable for selling the same. It did not determine the rights of any subsequent execution creditors, nor did it determine any rights that the plaintiff in that issue acquired after the levy in August, 1881. Jordan was not a party to that issue: Bain *v.* Lyle, 18 P. F. S., 60. The only issue tried in an Interpleader suit is the question between the execution creditor and claimant.

If Jordan abandoned his contract with Seeley after the liens of the execution attached, the title to the property reverted to the claimants, subject to the lien of the execution. And where the lien of the executions is discharged, either by payment or otherwise, the title of the claimants became complete. Again, under the law of this case the plaintiff cannot recover in an action of replevin, and the court should have affirmed the several points of the plaintiffs in error, without referring to each particular point submitted. Garey, the plaintiff below, stands no higher than Jordan. In fact, he took the assign-

ment of the Jordan contract more than one year after he had full notice that Smulls did not sell the timber to Seeley, and that Seeley only had the right to manufacture the timber on the lot; that it was not till after it was manufactured that he had the opportunity of purchasing it, then not till he had paid 0.75 per thousand for the timber actually manufactured into lumber. Garey having knowledge of this fact stands precisely in Seeley's shoes.

Jordan could not acquire any greater right in the timber as a purchaser than Seeley had, even without full knowledge; but Garey had full knowledge of the Smull contract with Seeley because he was a party in the suit with Smull, but then he claimed to be an execution creditor. A contract may be void as to creditors of a vendee, but good as between the vendor and vendee: See the case of the Brunswick & Balke Company *v.* Hoover, *et. al.*, 14 Norris, 508.

*E. M. Dunham,* (with whom was *E. P. Ingham,*) for defendant in error. Jordan was an innocent purchaser for value without notice of any claim on the part of the Smulls to any right in the timber. Garey purchased his title.

By the terms of the contract Seeley was compelled to cut down the timber and peel it. The timber so felled was personal property. It was in Seeley's possession. It was sold and delivered by him to Jordan. It was levied upon by the sheriff as Jordan's property. It was purchased from Jordan by a judgment creditor, to secure his debt, without any notice of Smull's claim. It is impossible to question the legality of such a transaction. If anything could make this view of the case stronger, it consists in the fact that O. A. Seeley after receiving in payment upon his contract with Thos. J. Jordan, about thirteen hundred dollars, took advantage of the clause in his contract which permitted him on failure of any payment to elect to have the whole purchase money become due, and entered judgment for the whole amount remaining unpaid. Upon that judgment he issued execution, and that judgment has ever since that time been held over Jordan, ready to take any property of his that could anywhere be found. To compel a man to pay for property, or what is equivalent thereto, to hold a judgment against him for it, and then deny his ownership of that property is so grossly against equity that no court can entertain such a proposition for a moment. And again, O. A. Seeley having sold this property to Thos. J. Jordan now turns around and pleads, that when he sold the same he was not the owner, and it seems to us, that from these facts he is certainly estopped from raising such a plea. When W. C. Garey undertook to get possession of the property he had

[Seeley v. Garey.]

honestly purchased he found it in possession of this same O. A. Seeley. He brings replevin against O. A. Seeley. O. A. Seeley pleads "property in F. T. Page, H. S. Dunham and N. K. Woodward." And in justification of his plea claims that he had no right to sell the property to T. J. Jordan, being bound by his previous contract with Smull Bros. not to sell it.

It is immaterial whether Seeley ordered his writ returned or not, because he was at liberty to issue another whenever he pleased.

Mr. Justice TRUNKEY delivered the opinion of the court, October 5th, 1885.

On April 21st, 1880, by articles of agreement with Smull Brothers, Seeley purchased a tract of land with right to take possession immediately. The vendors reserved all the "sawing timber" in case the vendee should fail to manufacture the same on said land as provided by the agreement. Seeley agreed to manufacture at least fifteen hundred thousand per year, to pay seventy-five cents per thousand, to be applied on the purchase money of the land, and upon such payment then the title to said lumber to vest in him with right to remove it from the premises. Also he was bound to peel and deliver hemlock bark to the vendors, in each year, a portion of its value to be credited on said purchase money.

Seeley took possession of the land, built a saw-mill, cut a part of the hemlock trees and peeled the bark, and began the manufacture of lumber. On October 7th, 1880, he agreed to sell to Jordan "all the sawing timber" on said land, with right to enter "to get said timber as fast and when the same has been peeled," and not to take any timber from any part of the land "only where the hemlock has been peeled," for which Jordan agreed to pay $7,000; Seeley reserved the hemlock and birch bark and obligated himself to peel about two thousand cords of bark per year. It was agreed that for certain non-performance by Jordan the agreement should become void at the option of Seeley, and then he could "resume possession of the mill and premises and have the rights to treat Jordan as tenant holding over after the expiration of a lease." This agreement contains no provision that upon the contract becoming void Jordan shall lose his right to the timber already cut; nor is he prohibited from removing the timber already cut, at any time before or after the contract may be declared void. The logs and lumber in controversy are part of the timber which was cut and peeled by Seeley before the making of the contract, and possession of said timber was delivered to Jordan who held it until taken in execution by the sheriff. At the making of the contract Jordan paid $600 on the pur-

chase money, and made the next six payments of $100 each on the stipulated dates. He carried on the manufacture of lumber until August, 1881, when he failed. Soon after, Seeley gave notice to Jordan that because of his non-performance, his rights under the contract had ceased and the contract had become void. Thereupon Seeley took possession of the realty and Jordan went out—apparently there was no dispute respecting the right of the one to enter and the duty of the other to leave.

Prior to said notice, by virtue of divers executions, the sheriff had levied on the personal property of Jordan, and Smull Brothers notified the sheriff that they claimed the timber, logs and mill. On petition of the sheriff a rule was granted on the claimants to appear and maintain or relinquish their claim to the property levied upon; afterwards an issue was ordered and Page, grantee of the Smulls, and Seeley were permitted to join as plaintiffs in the issue. The claimants gave bond to the sheriff and thereby acquired a right of possession to the personal property levied upon, until the issue should be determined. When that issue was tried and judgment entered against him, such right instantly ceased. Then the sheriff could take and sell the property, if so required by the plaintiff in the execution. If the writ was stayed, or levy abandoned, the real owner of the property had right of possession. Had the sheriff demanded the property for sale by virtue of his writ, in case of non-delivery the claimants would have been liable for its value. Upon abandonment of the levy, the false claim that had been set up against the execution-plaintiff would not be a defence against the owner in an action for recovery of his property.

The issue in the interpleader was between the claimants of the property and the plaintiffs in the executions, and its determination settled that the claimants had no title that would prevent the execution-plaintiff from seizing and selling the property in satisfaction of their judgments against Jordan. But Jordan was not a party in the issue, and against him the plaintiffs might have had a valid title. Frequently a debtor may have good title to personal property as respects the right of his creditor to seize the same in execution, but no title as against a person with whom he has a contract respecting such property. For instance, a sale and delivery of personal property, with an agreement that the ownership shall remain in the vendor until the purchase money is paid, enables creditors of the vendee to seize and sell the same in payment of their debts; but the contract may be valid between the parties, and in default of payment by the vendee as he agreed he shall have no right of property or possession against the vendor. Hence, it is nec-

[Seeley v. Garey.]

essary to ascertain if Jordan had title as against the claimants, for Garey purchased the lumber at private sale from Jordan, after full knowledge of the alleged title of Smull Brothers and their grantee. Garey did not purchase at a judicial sale; nor did he purchase from Jordan without knowledge of the adverse claim. If Jordan was the absolute owner of the property he had a right to sell it, and the purchaser by discharging the lien of the levy on Pomeroy's execution, had right to immediate possession.

The sale of the timber in controversy by Seeley to Jordan was absolute, and in no event was Jordan's title to be abrogated. Jordan purchased without knowledge of the agreement between Smull Brothers and Seeley. This timber was personalty in the possession of Seeley who had been and was at the time of the sale by him to Jordan, manufacturing and disposing of it as his own. It was not the duty of Jordan to inquire of Smull Brothers if Seeley had title. Upon the uncontroverted facts, proved by both Seeley and Jordan, in connection with the written contract, the court rightly instructed the jury that "The delivery of the possession of the said sawing timber already cut down and peeled by Seeley in accordance with the terms of the contract, conveyed to Jordan the absolute ownership of the timber which was then down and so delivered by Seeley to him." Nor was there any question of the fact that Garey had acquired Jordan's title to the timber, and an assignment of Pomeroy's judgment, before he issued the writs, in replevin. Having become the owner of that judgment and also of the property levied upon, there was no occasion for a judicial sale—he had right to recover the property or its value.

Conceding that the testimony referred to in the first and second specifications of error was improperly received for the purposes for which it was offered. its admission did no hurt to the defendant. So far as concerns this case it is immaterial whether Seeley made an election of remedy under his contract with Jordan, for the timber in controversy was vested in Jordan. And although the record in the issue may not have determined whether Jordan owned the property as against the plaintiffs in that issue, the case was finally put on the true ground, namely, the sale and delivery of the timber to Jordan vested in him absolute title.

The sixth assignment is not sustained. As the case stood it was no matter whether Seeley gave notice of forfeiture to Jordan, or whether he ordered his writ to be returned before the giving of such notice. Therefore, we express no opinion upon the ruling that parol testimony that Seeley ordered the sheriff to return the execution before the 13th day of September, 1881, was inadmissible on the ground that it contradicted

the record which set forth nothing that the sheriff did, except as follows : I return this writ.

We deem it unnecessary to specially note any of the other specifications of error.

Judgment affirmed.