**Eduardo JIMENEZ, Plaintiff,**

v.

**Michael J. ASTRUE, Commissioner of Social Security, Defendant.**

**No. CV 08–1572–RC.**

United States District Court, C.D. California.

Feb. 23, 2009.

---

Brian C. Shapiro, Lawrence D. Rohlfing Law Offices, Santa Fe Springs, CA, for Plaintiff.

Assistant US Attorney, Office of US Attorney, Los Angeles, CA, Office of the General Counsel for Social Security Adm., Jean M. Turk, San Francisco, CA, for Defendant.

## OPINION AND ORDER

ROSALYN M. CHAPMAN, United States Magistrate Judge.

Plaintiff Eduardo Jimenez filed a complaint on March 12, 2008, seeking review of

the Commissioner's decision denying his applications for disability benefits. On August 26, 2008, the Commissioner answered the complaint, and the parties filed a joint stipulation on September 30, 2008.

## BACKGROUND

### I

On June 20, 2002, plaintiff applied for disability benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423, claiming an inability to work since August 15, 2000, due to right shoulder, lower back and right knee injuries. Certified Administrative Record ("A.R.") 86–88, 90. The plaintiff's application was initially denied on September 5, 2002, and was denied again on December 27, 2002, following reconsideration. A.R. 66–74. The plaintiff then requested an administrative hearing, which was held on January 12, 2004, before Administrative Law Judge Peggy M. Zirlin ("the ALJ"). A.R. 75, 2344–67. On April 22, 2004, the ALJ issued a decision finding plaintiff is not disabled. A.R. 606–17, 1718–29. The plaintiff appealed this decision to the Appeals Council, which remanded the matter to the ALJ on March 11, 2005.[1] A.R. 618–35, 1684.

On March 13, 2007, the ALJ held a new administrative hearing, which considered both the Title II and SSI applications. A.R. 27, 2368–97. On April 20, 2007, the ALJ again found plaintiff is not disabled. A.R. 24–49, 1685–1710, 1730–55. The plaintiff appealed this decision to the Appeals Council, which denied review on December 18, 2007. A.R. 14–22, 1682–83.

### II

The plaintiff, who was born on October 12, 1956, is currently 52 years old. A.R. 86, 1562. He has a GED, and has previously worked in a warehouse and as a butcher. A.R. 91, 96.

On or about August 15, 2000, plaintiff injured himself at work, hurting his back and legs.[2] A.R. 249, 283. On April 5, 2002, Thomas A. Curtis, M.D., a psychiatrist, examined plaintiff, psychologically tested him, diagnosed him as having an unspecified depressive disorder with anxiety and psychological factors affecting medical condition, and found plaintiff was temporarily totally disabled. A.R. 281–93, 459–73, 552–64.[3] Plaintiff continued to receive treatment from Dr. Curtis, including psychotherapy and medication. A.R. 672, 875, 1002–42, 2168–79.

On January 13, 2004, Dr. Curtis opined plaintiff remained temporarily totally disabled, he would likely be precluded from returning to his pre-injury occupation due to his psychiatric condition, and he remained too depressed and anxious to concentrate on vocational rehabilitation. A.R. 550–51, 1038–39. On February 24, 2004, Dr. Curtis opined plaintiff had "marked" impairment in his ability to understand, remember, and carry out short, simple instructions, and "extreme" limitations in his ability to: understand, remember, and

---

1. In remanding the matter to the ALJ, the Appeals Council noted that plaintiff had also filed an application for disability benefits under the Supplemental Security Income program ("SSI") of Title XVI of the Act on December 15, 2004. A.R. 635, 1568–72, 1982–86. Further, plaintiff had also reapplied unsuccessfully for Title II disability benefits on December 15, 2004, A.R. 1354–58, 1562–67, 1976–1981, and this application was denied on May 18, 2005.

2. Since plaintiff does not challenge the ALJ's assessment of his physical condition, the Court will summarize only those medical records addressing plaintiff's mental condition.

3. The administrative record contains multiple copies of certain documents, including some of Dr. Curtis's reports. The Court will not cite each instance these documents appear in the record.

carry out detailed instructions; make judgments on simple work-related decisions; interact appropriately with the public, supervisors, and co-workers; respond appropriately to work pressures in a usual work setting; and respond appropriately to changes in a routine work setting.[4] A.R. 565–66, 857–58. Dr. Curtis further found plaintiff continued to experience depression and anxiety, as well as lack of concentration and attention and memory impairment. A.R. 565, 857. Dr. Curtis determined plaintiff was totally disabled since he could not tolerate the stress of a work environment, interact and communicate effectively, or make decisions. A.R. 566, 858.

On May 3, 2004, Dr. Curtis reexamined plaintiff and again conducted psychological testing, and determined plaintiff was permanent and stationary.[5] A.R. 666–94, 869–97. Dr. Curtis opined plaintiff had a "severe" impairment in his ability to comprehend and follow instructions, perform simple and repetitive tasks, maintain work pace, perform complex and varied tasks, relate to other people, influence people, make generalizations, evaluations, or decisions, and accept and carry out responsibility. A.R. 689–90, 892–93. Dr. Curtis also stated:

> If [plaintiff] were to attempt any normal or regular work routine, his mental condition would likely rapidly worsen to the point of totally incapacitating impairment in all eight areas of emotional functioning [set forth above]. Under such conditions, his pain, insomnia, de-

pression, frustration, agitation, fatigue, anxiety and psychogenic somatization would preclude employment on an indefinite basis. Because of extreme depressive mental disorder with loss of reality perception, [the plaintiff] would likely be precluded from competition in the labor market. There have been hallucinatory-like experiences, auditory hallucinations, psychotic anxieties, confusional mental states, paranoid ideation, somatic delusions, reality distortions and mental disorganization such that he could not be relied upon to consistently comprehend and follow instructions, perform routine duties, perform complex duties, and regularly get to work, stay at work and keep working on the job. There have been additional depressive psychiatric symptoms with emotional peculiarities and elements of interpersonal mistrust such that [plaintiff] could not be relied upon to normally relate to people and influence people on the job. He could not assume responsibility for direction, control or other management duties.

A.R. 688–89, 891–92.

On February 7, 2005, and February 12 and May 21, 2007, Dr. Curtis again determined plaintiff was permanent and stationary. A.R. 1146–47, 1526–27, 1940–41, 2167. On June 29, 2005, William W. Kaiser, Ph.D., a psychologist, opined plaintiff had "moderate"[6] limitations in his ability to understand and remember short, simple instructions; "marked" impairments in his ability to carry out short, simple instructions, make judgments on simple

---

4. In this context, "marked" means "[t]he ability to function is severely limited but not precluded[,]" and "extreme" means "[t]here is no useful ability to function in this area." A.R. 565.

5. "A disability is considered 'permanent and stationary' for workers' compensation purposes 'after the employee has reached maximum medical improvement or his or her con-

dition has been stationary for a reasonable period of time.'" *Booth v. Barnhart,* 181 F.Supp.2d 1099, 1103–04 n. 3 (C.D.Cal.2002) (citations omitted).

6. "Moderate" means "[t]here is a moderate limitation in this area, but the individual is still able to function satisfactorily." A.R. 1372, 1413.

work-related decisions, interact appropriately with supervisors and co-workers, and respond appropriately to changes in a routine work setting; and "extreme" limitations in his ability to understand, remember, and carry out detailed instructions, interact appropriately with the public, and respond appropriately to work pressures in a usual work setting. A.R. 1372–74, 1413–15, 2181–83. Dr. Kaiser further opined plaintiff was unable to work because he was beset by depression and anxiety, irritable and withdrawn, and was unable to concentrate, focus on tasks, remember things, or communicate effectively with co-workers. *Id.*

On April 19, 2005, Ernest A. Bagner, III, M.D., a psychiatrist, examined plaintiff and diagnosed him with an unspecified depressive disorder and determined plaintiff's Global Assessment of Functioning ("GAF") was 60.[7] A.R. 1389–92, 1776–79. Dr. Bagner concluded:

> [plaintiff] would have mild limitation interacting with supervisors, peers and the public and maintaining concentration and attention. He would have mild to moderate limitations completing simple tasks and completing a normal work-week without interruption. He would have moderate limitations handling normal stresses at work. H[e] would have moderate to marked limitation completing complex tasks.

A.R. 1392, 1779.

On May 5, 2005, Melvin Morgan, M.D., a nonexamining psychiatrist, opined plaintiff had an unspecified depressive disorder that causes "mild" restriction in the activities of daily living, "mild" difficulty maintaining social functioning, "moderate" difficulties maintaining concentration, per-

sistence or pace, and has caused "one or two" episodes of decompensation. A.R. 1393–1406. Dr. Morgan concluded plaintiff is capable of at least simple repetitive tasks. A.R. 815, 1405, 1409. Dr. Morgan also opined plaintiff is: "moderately-to-markedly" limited in his ability to understand, remember and carry out detailed instructions; "moderately" limited in his ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and respond appropriately to changes in the work setting; and "mildly-to-moderately" limited in his ability to remember locations and work-like procedures, understand, remember and carry out very short and simple instructions, and complete a normal work day and work week without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, but was otherwise not significantly limited. A.R. 1407–10.

## DISCUSSION

### III

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying plaintiff disability benefits to determine if his findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching his decision. *Sam v. Astrue,* 550 F.3d 808, 809 (9th Cir.2008) (per curiam); *Vasquez v. Astrue,* 547 F.3d 1101, 1104 (9th Cir.2008).

---

7. A GAF of 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders,* 34 (4th ed. (Text Revision) 2000).

■ The claimant is "disabled" for the purpose of receiving benefits under the Act if he is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). "The claimant bears the burden of establishing a prima facie case of disability." *Roberts v. Shalala,* 66 F.3d 179, 182 (9th Cir.1995), *cert. denied,* 517 U.S. 1122, 116 S.Ct. 1356, 134 L.Ed.2d 524 (1996); *Smolen v. Chater,* 80 F.3d 1273, 1289 (9th Cir.1996).

The Commissioner has promulgated regulations establishing a five-step sequential evaluation process for the ALJ to follow in a disability case. 20 C.F.R. §§ 404.1520, 416.920. In the **First Step,** the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the **Second Step,** the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting him from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If so, in the **Third Step,** the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. Part 404, Subpart P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If not, in the **Fourth Step,** the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If not, in **Step Five,** the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g).

Moreover, where there is evidence of a mental impairment that may prevent a claimant from working, the Commissioner has supplemented the five-step sequential evaluation process with additional regulations addressing mental impairments. *Maier v. Comm'r of the Soc. Sec. Admin.,* 154 F.3d 913, 914 (9th Cir.1998) (per curiam). First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(2–4), 416.920a(c)(2–4). Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment. 20 C.F.R. §§ 404.1520a(d), 416.920a(d). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing. 20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if a Listing is not met, the ALJ must then perform a residual functional capacity assessment, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding plaintiff's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§§ 404.1520a(c)(3), 416.920a(c)(3) ]." 20 C.F.R. §§ 404.1520a(d)(3), (e)(2), 416.920a(d)(3), (e)(2).

Applying the five-step sequential evaluation process, the ALJ found plaintiff "has not engaged in substantial gainful activity since August 15, 2000, the alleged onset date." (Step One). The ALJ then found plaintiff has the severe impairments of "status post medial meniscectomy and sy-

novesctomy [sic] to repair a tear in the right knee, recurring discogenic pain and left shoulder supraspinatus bursal irregularities"; however, plaintiff's mental impairment is not severe.[8] (Step Two). The ALJ also found plaintiff does not have an impairment or combination of impairments that meets or equals a Listing. (Step Three). The ALJ next determined plaintiff cannot perform his past relevant work. (Step Four). Finally, the ALJ found plaintiff is able to perform a significant number of jobs in the national economy; therefore, he is not disabled. (Step Five).

## IV

■ The Step Two inquiry is "a de minimis screening device to dispose of groundless claims." *Smolen,* 80 F.3d at 1290; *Webb v. Barnhart,* 433 F.3d 683, 687 (9th Cir.2005). The Supreme Court has recognized that including a severity requirement at Step Two of the sequential evaluation process "increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Bowen v. Yuckert,* 482 U.S. 137, 153, 107 S.Ct. 2287, 2297, 96 L.Ed.2d 119 (1987). However, an overly stringent application of the severity requirement violates the Act by denying benefits to claimants who do meet the statutory definition of disabled. *Corrao v. Shalala,* 20 F.3d 943, 949 (9th Cir.1994).

■ A severe impairment or combination of impairments within the meaning of Step Two exists when there is more than a minimal effect on an individual's ability to do basic work activities. *Webb,* 433 F.3d at 686; *Mayes v. Massanari,*

276 F.3d 453, 460 (9th Cir.2001); *see also* 20 C.F.R. §§ 404.1521(a), 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit [a person's] physical or mental ability to do basic work activities."). Basic work activities are "the abilities and aptitudes necessary to do most jobs," including physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling, as well as the capacity for seeing, hearing and speaking, understanding, carrying out, and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b); *Webb,* 433 F.3d at 686. If a claimant meets his burden of demonstrating he suffers from an impairment affecting his ability to perform basic work activities, "the ALJ *must* find that the impairment is 'severe' and move to the next step in the SSA's five-step process." *Edlund v. Massanari,* 253 F.3d 1152, 1160 (9th Cir.2001) (emphasis in original); *Webb,* 433 F.3d at 686.

■ Here, both Drs. Curtis and Kaiser, the only treating or examining physicians to offer an opinion on plaintiff's mental condition, concluded plaintiff has a severe mental impairment and is unable to work due to that impairment. A.R. 565–66, 688–90, 857–58, 891–93, 1146–47, 1526–27, 1940–41, 2167. Additionally, Dr. Bagner determined plaintiff has a GAF of 60, which "suggests ... a mental impairment that is 'severe' in nature." *Bennett v. Barnhart,* 264 F.Supp.2d 238, 255 (W.D.Pa.2003); *see also Samuel v. Barnhart,* 295 F.Supp.2d 926, 952 (E.D.Wis. 2003) (examining physicians' opinions

---

**8.** In reaching this conclusion, the ALJ found plaintiff has no "more than mild limitations in activities of daily living, social functioning, concentration, persistence, or pace," and he experienced no episodes of decompensation. A.R. 41.

"show that plaintiff had a severe impairment" when these physicians found plaintiff's GAF was between 51–60, which meant plaintiff's "symptoms were moderate, and that he would have moderate difficulty in social, occupational or school functioning").[9] Moreover, Dr. Morgan, a nonexamining psychiatrist, found plaintiff has a depressive disorder, which is a severe condition, and opined plaintiff has "moderate" difficulties maintaining concentration, persistence or pace, has had "one or two" episodes of decompensation, and is: "moderately-to-markedly" limited in his ability to understand, remember and carry out detailed instructions; "moderately" limited in his ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and respond appropriately to changes in the work setting; and "mildly-to-moderately" limited in his ability to remember locations and work-like procedures, understand, remember and carry out very short and simple instructions, and complete a normal work day and work week without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. A.R. 1393–1410.

The ALJ rejected the opinions of Drs. Curtis, Kaiser, Bagner and Morgan, and instead relied on the 2002 opinion of nonexamining physician Patrick Ryan, who opined that plaintiff was depressed but his depression was not expected to remain severe for 12 months. A.R. 40–41. However, since Dr. Ryan's 2002 opinion was based solely on Dr. Curtis's medical records, A.R. 419, his opinion does not constitute substantial evidence to support the ALJ's Step Two determination that plaintiff does not have a severe mental impairment. *See Orn v. Astrue,* 495 F.3d 625, 632 (9th Cir.2007) ("When [a nontreating] physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the [nontreating] physician are not 'substantial evidence.' "); *Pitzer v. Sullivan,* 908 F.2d 502, 506 n. 4 (9th Cir.1990) ("The non-examining physicians' conclusion, with nothing more, does not constitute substantial evidence, particularly in view of the conflicting observations, opinions, and conclusions of an examining physician.").

Apart from relying on Dr. Ryan's opinion, the ALJ rejected Dr. Curtis's opinions because "the record does not support 12 months of psychiatric treatment" in that "Dr. Curtis' treatment notes of the [plaintiff] do not reflect 12 months of individual and/or group therapy." A.R. 40–41. However, there is a simple explanation for this. On January 12, 2005, when the Commissioner requested Dr. Curtis's medical records, only Dr. Curtis's medical records from January 2004 through 2005 were sought—although Dr. Curtis first saw plaintiff in April 2002. A.R. 281–93, 1001. Therefore, Dr. Curtis provided the Commissioner with only his treatment notes from January 8, 2004, through November 22, 2004. A.R. 1002–42. However, Dr. Curtis's billing records show plaintiff's treatment began on April 18, 2002, and continued through at least April 24, 2007. A.R. 2168–79. Therefore, this reason also does not support the ALJ's Step Two determination that plaintiff's mental impairment is not severe.

---

9. Nevertheless, Dr. Bagner determined plaintiff has mild-to-moderate limitations completing simple tasks and completing a normal workweek without interruption, moderate limitations handling normal stresses at work, and moderate-to-marked limitation completing complex tasks. A.R. 1389–92, 1776–79.

Finally, the ALJ noted that when plaintiff received treatment at the Para Latino Medical Center in June and July 2005, Luis Alejandro Perez, M.D., noted plaintiff had no psychiatric complaints and found plaintiff to be alert and oriented to time, place and person with appropriate mood and affect. A.R. 1425–31. However, since plaintiff sought treatment from Dr. Perez for physical complaints, and not his mental state, it is not surprising plaintiff did not discuss any psychiatric complaints with Dr. Perez. *Cf. Widmark v. Barnhart,* 454 F.3d 1063, 1068 (9th Cir.2006) ("It is reasonable ... to expect that [plaintiff's] ... physicians focused their attention on the subject of his complaint, i.e., his neck and back. But just as no reasonable person would expect a podiatrist seeing a patient who complains of foot problems to thoroughly examine the full range of that patient's hearing, it is unreasonable to expect [plaintiff's] ... physicians undertook a thorough range of motion evaluation of [plaintiff's] right thumb.").

For all these reasons, the ALJ's Step Two determination that plaintiff does not have a severe mental impairment is not supported by substantial evidence in the record.

## V

When the Commissioner's decision is not supported by substantial evidence, the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *McCartey v. Massanari,* 298 F.3d 1072, 1076 (9th Cir.2002). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart,* 379 F.3d 587, 593 (9th Cir.2004). Here, remand is appropriate.[10] *Edlund,* 253 F.3d at 1160; *Montijo*

*v. Sec'y of Health & Human Serv.,* 729 F.2d 599, 602 (9th Cir.1984) (per curiam).

### ORDER

IT IS ORDERED that: (1) plaintiff's request for relief is granted and defendant's request for relief is denied; and (2) the Commissioner's decision is reversed, and the action is remanded to the Social Security Administration for further proceedings consistent with this Opinion and Order, pursuant to sentence four of 42 U.S.C. § 405(g), and Judgment shall be entered accordingly.

---

**10.** Having reached this conclusion, it is unnecessary to reach plaintiff's other argument, which would not warrant further relief than herein granted.