[Civ. No. 55017. Second Dist., Div. Two. Dec. 12, 1979.]

UNIVERSAL CITY STUDIOS, INC., Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and
BERNICE LEWIS, Respondents.

648

---

Nichols & Harris and Robert C. Nichols for Petitioner.

Rose, Klein & Marias, Jerome H. Goldberg, Richard W. Younkin, William B. Donohoe and Dexter W. Young for Respondents.

---

OPINION

**BEACH, J.**—The Workers' Compensation Appeals Board (Board) awarded employee Bernice Lewis $22,260 as workers' compensation for her claimed disability, resulting from a sprained ankle. Her employer, petitioner Universal City Studios, Inc. (Universal), petitioned for writ of review before this court. We granted the writ to determine employer's claims. Universal contends: (1) the Workers' Compensation Appeals Board, in denying employer's petition for reconsideration of the Workers' Compensation Appeals Board judge's award, failed to consider all of the relevant evidence, specifically in failing to order a full transcript of the testimony of the hearing before the trial judge; and (2) the trial judge erred in awarding the permanent disability based on a "semi-sedentary work restriction," because the evidence does not support the finding of the trial judge or of the Board regarding the level of the injured worker's permanent disability.

FACTS

Employee Bernice Lewis, a bookkeeper-cashier, while walking to work on February 9, 1976, jumped over a puddle in employer's parking lot. She came down hard on her left foot. There was no fracture. She did not fall. There was no immediate pain. However, about an hour later she started having pain and went to the hospital emergency room and was treated for a sprained ankle. Thereafter, Universal furnished medical treatment given by her chosen physician. She received temporary disability payment. At the hearing to determine the nature and extent of permanent disability, the workers' compensation judge found the injury resulting in permanent disability of 61 percent which was based upon a semisedentary work restriction.[1] Upon that rating the trial judge awarded Lewis $22,260 "permanent disability" compensation.

---

[1]The California Permanent Disability Rating Schedule (Rating Schedule) (p. 1A) states that a disability resulting in a limitation to "*semi-sedentary* work contemplates

Lewis was treated by her own physician, J. H. Abramson, M.D., for several months. In his final report dated December 2, 1976, Dr. Abramson found that Lewis had reached a permanent and stationary stage and thus could be rated for permanent disability. Dr. Abramson at that time stated that Lewis "should be on a sedentary job as a permanent restriction."[2]

At the request of Universal, Lewis was examined by Sheldon Schoneberg, M.D. In his report of January 8, 1977, Dr. Schoneberg found that Lewis had very little disability. Dr. Schoneberg noted that "[o]bjectively [Lewis] shows some minimal restriction of dorsiflexion and inversion of the left foot." Dr. Schoneberg felt that Lewis was capable of working as a cashier for Universal with her "present level of discomfort...." Dr. Schoneberg described Lewis' discomfort "as intermittent and slight in nature."

Because of the conflict in conclusions of the reports, as to the extent of Lewis' disability, the workers' compensation judge referred Lewis to an agreed medical examiner, Lorne A. Rolston, M.D. In his report of October 17, 1977, Dr. Rolston indicated that Lewis' condition was permanent and stationary and ready for rating. Dr. Rolston reported Lewis' *subjective* complaints were "[c]onstant minimal to slight pain, left ankle and foot, becoming more than moderate with prolonged walking or standing." Dr. Rolston opined Lewis' work capacity was such that she is "able to perform work actively which will permit her to sit and stand equally, alternately, intermittently throughout the day."

Thereafter, the workers' compensation judge sent Dr. Rolston's report to the rating specialist with the notation which read only: "Rate Dr. Rolston's report." The disability evaluation specialist, D. S. Lucien, recommended a 60 percent standard rating for the factors of disability which adjusted for age and occupation (see Lab. Code, § 4660) to 58 percent permanent disability.

---

the individual can do work approximately one half the time in a sitting position, and one half the time in a standing or walking position, with a minimum of demands for physical effort, whether standing, walking or sitting."

[2]The Rating Schedule (p. 1A) states that a disability resulting in a limitation to *sedentary* work "contemplates the individual can do work predominately in a sitting position at a bench, desk, or table with a minimum of demands for physical effort and with some degree of walking and standing being permitted."

Universal then requested cross-examination of Dr. Rolston and the disability evaluation specialist. Lewis requested cross-examination only of the disability evaluation specialist. A hearing was held for this purpose on June 27, 1978.

Dr. Rolston testified he intended Lewis to have a semisedentary work restriction for her industrial injury; the restriction was based on Lewis' *subjective* complaint; he did not believe that Lewis' condition would worsen if she exceeded the work restriction but it would increase her subjective complaints; and, he understood the definition of "semi-sedentary work" as stated in the Rating Schedule.

The disability evaluation specialist testified: he followed the judge's instructions and rated Lewis' disability as indicated by Dr. Rolston's report; he applied a 60 percent standard rating, which is the standard for semisedentary work, based on the language of Dr. Rolston's report that Lewis should have a job where she could "sit or stand at will," which in his mind is the same as a semisedentary rating; a semisedentary work restriction refers to working equal time in a sitting and standing position; and it was immaterial whether the reasons for the semisedentary restriction were for Lewis' subjective complaints or whether it was for a prophylactic restriction by the doctor.

Upon questioning by Lewis, the disability evaluation specialist acknowledged he had used the wrong occupational variant in rating Lewis' permanent disability. The specialist recomputed the proper rating as 61 percent permanent disability.[3] At the conclusion of the cross-examination of Dr. Rolston and the rating specialist, Universal moved that Dr. Rolston's report and the rating be stricken.

---

[3]The rating of 61 percent permanent disability was based upon the following formula obtained by application of the Rating Schedule:
21.5-60   39C   51   61.
The "21.5" in the formula designates the part of the body injured, the ankle. The "60" refers to the standard rating assigned by the disability evaluation specialist to the factors of permanent disability described in Dr. Rolston's report. The "39" refers to the occupation group number—the letter "C" following the "39" is the adjusting factor of the standard rating for that occupation. The occupational variant depends upon the part of the body involved. The standard rating is adjusted upward or downward depending on the occupational variant. Here, the occupational varient of "C" results in the adjustment of the standard rating of "60" down to "51." The "51" is then adjusted for Lewis' age (67 years old on the date of injury) and becomes 61 which is the final rating. (See Lab. Code, § 4660; 1 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d rev. ed. 1978) § 11.03; 1 Herlick, Cal. Workers' Compensation Law Handbook (2d ed. 1978) §§ 7.34-7.37; Cal. Workmen's Compensa-

A revised recommended rating was issued on August 22, 1978, whereunder the rating specialist recommended a 61 percent rating in accord with his testimony. On September 20, 1978, the workers' compensation judge issued the "Findings-Award" in this matter. Thereunder, the workers' compensation judge awarded Lewis, among other benefits, 61 percent permanent disability in accord with the revised recommended rating. This was then multiplied by the statutory number of weeks of weekly compensation allowable for each one percent of rated disability, resulting in the total award of $22,260 ordered paid.

Universal then sought reconsideration by the Board. Universal contended that Dr. Rolston's report and testimony did not support a finding that Lewis was restricted to semisedentary work as a result of her injury. Specifically, Universal contended that Dr. Rolston did not use the term "semi-sedentary work" within the meaning as stated in the Rating Schedule. Universal also asserted that Dr. Rolston's description of Lewis' subjective complaints and physical ability were inconsistent with a restriction of semisedentary work. Universal requested that a transcript of testimony be obtained by the Board as the judge's summary of testimony was inadequate as to the exact nature of Dr. Rolston's testimony.

The Board denied Universal's petition for reconsideration, stating in its Opinion and Order Denying Reconsideration (Opinion) in pertinent part: "Petitioner [Universal] argues that the Summary of Evidence of the June 27, 1978 hearing failed to fully restate all the relevant testimony of Dr. Lorne A. Rolston, the independent medical examiner, and D. S. Lucien, the permanent disability rating specialist. While petitioner alleges certain deficiencies in the Summary with regard to Dr. Rolston's testimony, it alleges no defect with regard to the testimony of the rating specialist. Nor does petitioner contest the accuracy of what was reported in the Summary, but requests that the Board seek a transcript to augment the record before us.

"Based on our examination of defendant's arguments and the record before us, we find no need for a complete transcript of Dr. Rolston's testimony. The Supreme Court, ruling *in bank* in *Allied Compensation*

tion Practice (Cont.Ed.Bar 1973) §§ 15.18-15.25; Welch, Fundamentals for Applying Cal. Schedule for Rating Permanent Disabilities (1975) pp. 3-6; see also, *Morgan v. Workers' Comp. Appeals Bd.* (1978) 85 Cal.App.3d 710, 713-714 [149 Cal.Rptr. 736].)

*Insurance Company* v. *IAC (Lintz)* (1961) 57 Cal.2d 115 [17 Cal.Rptr. 817, 367 P.2d 409], 26 CCC 241, held that *the Board is required to obtain a transcript only when specific and material defects in the Summary are established.* Even if we consider Dr. Rolston's additional testimony as alleged in the petition, we still conclude his testimony supports the semi-sedentary work restriction. His testimony as reported both in the Summary and as alleged in the petition support the conclusion that applicant [Lewis] would be prevented from performing full time work by her pain.

"In general, we believe the evidence supports the semi-sedentary work restriction on which the permanent disability rating is based. We are disinclined to disturb the workers' compensation judge's findings thereon. In his report, the workers' compensation judge explains that he relied on the [report and testimony of Dr. Rolston and the testimony of D.S. Lucien, the rating specialist] . . . ." (Italics added.)

DISCUSSION:

1. *Scope of Review Requires an Examination of the Entire Record.*

█ The Board erred in denying reconsideration. It appears from the record before us and from the opinion of the Board denying reconsideration that the Board simply relied upon what to it appeared to be substantial evidence which supported the referee's decision rather than examining the award and the evidence in the light of the entire record.

We may not and do not reweigh the evidence nor decide disputed questions of fact, nor resolve conflicts in the evidence. This the Board is empowered to do.

█ "'[A]lthough the board is empowered to resolve conflicts in the evidence [citations], to make its own credibility determinations [citations], and upon reconsideration to reject the findings of the referee and enter its own findings on the basis of its review of the record [citations], nevertheless, any award, order or decision of the board must be supported by substantial evidence *in the light of the entire record.* (citations).'" (Italics in original.) (*Lamb* v. *Workmen's Comp. Appeals Bd.,* 11 Cal.3d 274, 280-281 [113 Cal.Rptr. 162, 520 P.2d 978], quoting from *LeVesque* v. *Workmen's Comp. App. Bd.,* 1 Cal.3d 627, 635 [83 Cal.Rptr. 208, 463 P.2d 432].)

▓ That same standard and scope of review applies to this court in determining the petition for writ of review. We must determine whether the evidence, when viewed in the light of the entire record, (*Redner* v. *Workmen's Comp. Appeals Bd.*, 5 Cal.3d 83 [95 Cal.Rptr. 447, 485 P.2d 799]; *Lamb* v. *Workmen's Comp. Appeals Bd., supra,* 11 Cal.3d 274) supports the award. "The foregoing standard is not met 'by simply isolating evidence which supports the board and ignoring other relevant facts of record which rebut or explain that evidence.'" (*Lamb* v. *Workmen's Comp. Appeals Bd., supra,* at p. 281; *Garza* v. *Workmen's Comp. App. Bd.*, 3 Cal.3d 312, 317 [90 Cal.Rptr. 355, 475 P.2d 451]; *Greenberg* v. *Workmen's Comp. Appeals Bd.*, 37 Cal.App.3d 792 [112 Cal.Rptr. 626].)

At bench the evidence (as opposed to the statutory presumption) of actual physical inability to compete (the disability) is based entirely upon subjective complaints of slight or minimal pain. There is no testimony or other evidence of objective findings that the condition in any way, physiologically or functionally, prevents or disables the employee from performing whatever work she could have or would have performed in the future. There is only evidence that when she stands for a protracted period of time, dances, squats, or walks a certain number of blocks, she then complains of some aching or pain. While there is no evidence of any reason to doubt the truthfulness of the employee, the presence of pain is not a compensable limitation. It is but one of the subjective factors that the doctor considers in determining the actual existence of new limits upon motion or actual use of the particular part of the body.

In its denial of the request for reconsideration, the Board characterized Lewis' physical condition. The Board stated that Dr. Rolston's "testimony as reported both in the summary and as alleged in the petition support the conclusion that applicant *would be prevented from performing full-time work by her pain.*" We find no evidence whatever that the employee Lewis "would be prevented from performing full-time work by her pain."

To the contrary, the evidence from all of the doctors and medical reports indicate that Lewis can work full-time. The only question is whether the nature of that work will be or must be sedentary or semisedentary in limitation. The limitation is on the type of activity, not on whether it is full-time or part-time. It may be that the Board meant by its expression to indicate semisedentary work, but we are unable to say

with any degree of assurance that such is the case. The expression may have demonstrated a misconception of the entire case, which formed the basis of denying reconsideration.

Examining the evidence closely, it is clear that the only evidence which supports the theory that the employee should be confined to *semisedentary* work *as classified by the rater*, is the evidence of the employee's own subjective complaints and the doctor's acceptance of that subjective complaint. There is no objective evidence that the doctors concluded that Lewis is *permanently* restricted by reason of this injury to semisedentary work. None of the objective findings of any doctor disclose any physical abnormality or any functional disability of Lewis' left foot.

The evidence was not that the employee Lewis could at no time stand. There was no evidence that Lewis could not stand for the period of time that her work may have occasionally required of her. To the contrary, the undisputed evidence was that she sat and stood equally on her job. There was no evidence that Lewis would not be able to stand for the partial amount of time for any particular job in the open labor market, *of the type which she was trained or in other respects suited and available.* It is no answer to this lack of evidence to say that the ratings schedules which classify the disability according to the nature of injury, anatomical part, age and occupation all take this into account and that the results cannot be questioned. The requirements of *Hale* v. *Morgan*, 22 Cal.3d 388 [149 Cal.Rptr. 375, 584 P.2d 512], which we discuss more fully in part 2, *infra*; and *Lamb* v. *Workmen's Comp. Appeals Bd., supra*, 11 Cal.3d 274, which we have set forth above, fully controvert any such "hands-off" attitude toward the schedule or the presumptions used to create the schedule or resulting therefrom.

There is no evidence that Lewis tried to return to her work although the independent medical examiner and another doctor stated that she was able to perform work which would permit her to stand equally, alternately and intermittently throughout the day. On the other hand, there is evidence that after her injury, she danced, and took a three-week trip to Detroit, during which she chose to do without the medical therapy then being provided for her by her employer.

The worker is not to be penalized for trying to lead a normal life. The foregoing matters, however, are matters of evidence and part of the en-

tire record which should be assessed on a side-by-side basis with other evidence in determining her physical condition and ability.

The independent medical examiner said in his report "some *minimal* pain is noted on testing range of motion." (Italics added.) Certainly when testing the full extent of motion some discomfort or minimal pain is expected. This would be especially true when testing a sprained ankle. But that is not evidence of inability to use the leg or foot. It alone does not justify classifying the injury as an *all embracing* "lower limb injury" as used in the rating schedule for all lower limb injuries. It does not justify the presumption of inability to return and continue in her job or to be available for the "open job market." That there is "some minimal pain" or "slight tenderness localized to the posterior portion of the longitudinal ligament of the foot on the medial side" does not mean inability to use the foot in a normal way. These findings of the independent medical examiner simply mean that when she uses her foot, Lewis is going to notice the slight tenderness or discomfort a bit more quickly or more noticeably than usual.

### 2. *Scope of Review Authorizes Inquiry into the Fairness and Reasonableness of the Award.*

If we accept the review of the Board, there would seem to be no basis for annulment of the award by the court. Briefly stated that view is: (a) the operative facts are not disputed, i.e. a 67-year-old worker, injured at work, "injured lower extremity," resulting disability because of pain; (b) a specific rating schedule, authorized by statute is applied; (c) resulting in a definite percentage rating of disability and then multiplied by statutory amount, resulting in a fixed money award. ■ Nonetheless, even where undisputed operative facts meet the statutory basis of entitlement, a court of review must, as a part of the review in light of the entire record, examine other facts which may seem statutorily irrelevant or inoperative. Such facts may well be relevant and important when the result is examined for fairness, reasonableness and proportionality in the overall scheme of the law and the purposes sought to be accomplished by that law. This is not our own peculiar view of the scope of review applicable here. It is the historic inherent equitable duty of a court of review in circumstances as at present. We are guided in its application by the teaching of our Supreme Court in *Hale* v. *Morgan, supra*, 22 Cal.3d 388. Although there the court was considering a punitive statute allowing recovery of personal damages by a nonpaying tenant against a landlord, the nature, basis and the result of appellate

review there described is equally applicable here. In *Hale* v. *Morgan, supra,* the court explains that even a lawful statute may be subject to unconstitutional application. There, under the letter of the law and simple mathematical computation the $100-a-day penalty provision of Civil Code section 789.3[4] was prima facie applicable. Simple mechanical application of the statute to the statutorily recited facts disclosed a possible recovery of $36,500. Even so the trial court awarded one-half of the amount, $17,300. The Supreme Court struck down the award as confiscatory and wholly disproportionate. In doing so, the court stated "[s]uch a confiscatory result is wholly disproportionate to any discernible and legitimate legislative goal, and is so clearly unfair that it cannot be sustained." At bench petitioner does not raise any question of unconstitutionality. Nonetheless, we need not rely on such an attack. The appellant's contention and attack on the evidentiary lack of support for the award in this context allows examination into the size of the award. The basic disporportion of the award at bench to any proven disability, is so clear as to compel our intervention. We do not say that the rating procedures or the purposes thereof are unconstitutional. We simply observe that under *Hale* v. *Morgan, supra,* upon a case-by-case examination (*Id.*, at p. 404), when we discern an inequitable result, it is our duty to require reexamination. These principles, when applied, require reconsideration by the Board. ■ Guided by the teaching of *Hale* v. *Morgan,* simply and basically stated, we conclude here that the award is so disproportionate to the disability and the objectives of reasonably compensating an injured worker as to be fundamentally unfair.[5] On the evidence available in this record, the award demonstrates a windfall not just and fair compensation.

### 3. *The Award Tested by Considering the Purposes.*

■ The Workers' Compensation Law is intended to award compensation for *disability* incurred in employment. "The purpose of the

[4]Civil Code section 789.3 is phrased as a mandatory rather than a permissive statute. It provides that the landlord who violates that section "shall be liable to the tenant-...for all of the following: (1) Actual damages of the tenant. (2) One hundred dollars ($100) for each day...."

[5]We judiciously notice by way of example that had Lewis suffered the loss of an eye, she would have been rated less disabled, i.e. 51 percent. If she had suffered an amputation below the knee but still able to work with a prosthesis, the disability rating would have been 66 percent, only 5 percent more than her present rating of 61 percent for the sprained ankle.

award is not to make the employee whole for the loss which he has suffered but to prevent him and his dependents from becoming public charges during the period of his disability. . . . In short the award transfers a portion of the loss suffered by the disabled employee from him and his dependents to the consuming public. . . . Complete protection is not afforded the employee from disability because this would constitute an invitation to malinger or to be careless on the job as he would then lose nothing in assuming a disabled status." (*West* v. *Industrial Acc. Com.*, 79 Cal.App.2d 711, 721 [180 P.2d 972].)

"Thus, the Act not only strictly limits the amount recoverable (infra, §§ 168, 187) but does not allow compensation at all for certain elements of damage which may be asserted in a tort action, such as pain and suffering. (See *Jacobsen* v. *Ind. Acc. Com.* (1931) 212 C. 440, 447, 299 P. 66; *West* v. *Ind. Acc. Com.,* supra, 79 C.A.2d 718 [no compensation for pain unless it raises a presumption of incapacity to earn]; 1 Stanf.L.Rev.126 [criticizing the policies underlying such limited coverage]; 42 Cal.L.Rev.553; C.E.B., Work. Comp., p. 15; 2 Hanna 2d § 1.05; 1 Larson § 2.00.)" (2 Witkin, Summary of Cal.Law (8th ed. 1973) Workmen's Compensation, § 158, pp. 984-985.) ▆▆ Simple observation of the size of the award at bench discloses that the award here approaches if not actually exceeds the amount of any actual pecuniary loss which Lewis may or would suffer by reason of any disability resulting from the sprained ankle and the minimal residual pain. An award based on the slim evidence of disability here does not serve to attain the worthy purposes of the law but permits a windfall by submissive mechanical application of schedules and numbers determined by a rating specialist, without the use of judgment or discretion of the workers' compensation trial judge.

We believe it significant at this point that initially when first directed to rate this injury, the workers' compensation trial judge did not make findings of fact and conclusions upon any evidence as to the nature and extent of Lewis' actual physical impairment. The trial judge simply referred the medical examiner's report to the rating specialist. The significance of this is that the decision of what ultimate facts and findings regarding the extent and the type of disability were improperly made by the rater, using the report of the doctor rather than using the findings of the trial judge. Thus the record does not reflect that the trial judge weighed and considered all of the evidence relative to the physical ability and the impairment of the employee. Rather it demonstrates

that the trial court permitted the rater to decide among evidentiary facts. This procedure further does not allow review of whether or not the trial judge accepted in toto the report or the final conclusions of the doctor relative to the physical condition of Lewis without weighing the report's conclusion against other competent evidence which either diminished or contradicted the conclusion reached. ■ "'Expert medical opinion...does not always constitute substantial evidence on which the board may rest its decision. Courts have held that the board may not rely...upon inadequate medical history or examinations [citations].'" (*Redner v. Workmen's Comp. Appeals Bd.*, 5 Cal.3d 83, 96 [95 Cal.Rptr. 447, 485 P.2d 799].)

The trier of fact need not accept as binding the testimony of any one expert. Expert testimony is not conclusive upon the judge or the Board. The Board may and should consider all of the evidence tending to throw light on the issue. (*Liberty Mut. Ins. Co. v. Industrial Acc. Com.*, 33 Cal.2d 89 [199 P.2d 302].) The report of Dr. Rolston is not unreliable or suspect because of any inadequacy by Dr. Rolston. However, it is limited in usefulness to support the referee's finding that Lewis was permanently disabled to the extent of 61 percent, which is the result of the semisedentary conclusion reached by the rater. The rater arrived at that schedule description based upon the doctor's statement of limitation which in turn was admittedly based entirely upon Lewis' subjective complaint. Moreover, Dr. Rolston's conclusion is but one part in a much larger body of evidence. All other evidence indicates that the pain is truly mild or minimal in nature and does not actually prevent the use of the foot by Lewis.

■ The Board (or referee) must in any instruction to the rating bureau fully describe each separate factor of disability. (*Hegglin v. Workmen's Comp. App. Bd.*, 4 Cal.3d 162, 174 [93 Cal.Rptr. 15, 480 P.2d 967].) ■ Moreover, "'...it is the nature of the disability and not the anatomical part of the body to which the injury was inflicted which must be considered in computing compensation.'" (*Adams v. Workmen's Comp. Appeals Bd.*, 22 Cal.App.3d 214, 217, [99 Cal.Rptr. 269], quoting from *Luchini v. Workmen's Comp. App. Bd.*, 7 Cal. App.3d 141, 144 [86 Cal.Rptr. 453].)

### 4. *The Rating Is Not Conclusive*

The referral of this case to a rating specialist seems to have ended the matter for all practical intents and purposes. There seems to have been

no hard look at the facts and exercise of discretion in evaluating the physical facts on the part of the compensation trial judge.

"(a) *Rating Schedule.* Pursuant to statutory authority, the Administrative Director prepares and adopts an official *Rating Schedule*, based on accumulated data, and establishing the percentage of disability from a particular type of injury, in the case of an employee in a particular occupation, and of a particular age. The statute requires that this schedule take into consideration the nature of the injury or disfigurement, the occupation of the employee, his age, and 'the diminished ability of such injured employee to compete in an open labor market.' (Lab. C. 4660; see *Liberty Mut. Ins. Co.* v. *Ind. Acc. Com.* (1948) 33 C.2d 89, 91, 199 P.2d 302 [discussing the Rating Schedule and the evidentiary factors to be considered by the Director in determining the degree (percentage) of disability]; *Sweeney* v. *Ind. Acc. Com.,* (1951) 107 C.A.2d 155, 158, 236 P.2d 651 [burden of proof on petitioning employee]; *Bethlehem Steel Corp.* v. *Ind. Acc. Com.* (1951) 106 C.A.2d 373, 376, 235 P.2d 125 [broad discretion of Director]; *Vincent* v. *Ind. Acc. Com.* (1955) 136 C.A.2d 679, 289 P.2d 246 [same]; *Fidelity & Cas. Co.* v. *Work. Comp. App. Bd.* (1967) 252 C.A.2d 327, 331, 60 C.R. 442, infra, § 285; *Dalen* v. *Work. Comp. App. Bd.* (1972) 26 C.A.3d 497, 503, 103 C.R. 128 [employee entitled to show that his actual duties did not conform to duties contemplated under generic term 'house wrecker']; C.E.B., Work. Comp., p. 535 et seq.; 1 Hanna 2d §§ 1.04[4], 11.01 et seq.; Herlick § 7.7 et seq.;, 2 Larson § 58.00 et seq.; cf. *Gonzales* v. *Ind. Acc. Com.* (1958) 50 C.2d 360, 364, 325 P.2d 993, and dissent.)

"The theory of the 'diminished ability' provision is that, although the injury may not prevent the particular workman from resuming his former work, so that he gets his job back and suffers no loss of earnings, nevertheless he is less able to complete for new jobs, and does suffer a possible loss in future earning power; e.g., a one-eyed man competing with those with full sight is at a disadvantage. Hence, where there is a permanent disability, the full rating must be given, even though the employee goes back to work on the same job or a similar job during the period." (2 Witkin, Summary of Cal.Law (8th ed. 1973) Workmen's Compensation, § 176, pp. 996-997.)

■  The percentage of disability determined by use of the rating schedule is only prima facie evidence of the percentage of permanent disability to be attributed to each injury. Thus it is not absolute, bind-

ing and final. (Lab. Code, § 4660; *Liberty Mut. Ins. Co.*, v. *Industrial Acc. Com., supra*, 33 Cal.2d 89.) It is therefore not to be considered all of the evidence on the degree or percentage of disability. Being prima facie it establishes only presumptive evidence. Presumptive evidence is rebuttable, may be controverted and overcome.

At bench a factual element of the schedule was affected by other evidence which was ignored. That element is the presumption of a "diminished ability of such employee to compete in the open labor market." The result of the "consideration given" by the drafters of the rating schedule, the Permanent Disability Rating Bureau, is expressed in the formula described above and resulted in a fixed percentage of disability. The schedule presumes in all cases a diminished ability to compete.

In this case, any presumption that Lewis, as an injured employee, is unable to compete as adequately as before her injury in the present open labor market was totally overcome by the evidence of actual condition. The evidence is that her present employment is of a sedentary nature. She can return to it. She has not done so by choice, not by medical restriction or prohibition. There is no quarrel with the presumption, based upon the statutory scheme of her inability to fully compete in the labor market in the future. However, the extent to which that presumption operates is designated in practice by the determination of actual physical disability to work expressed in "percentages." That disability must be based on and supported by competent evidence, which the light of the entire record demonstrates, is genuinely of substantial value. We recognize that "...an employee may receive a permanent disability rating of 100 per cent and be entitled to the disability payments incident to such rating although he is able to return to work at the wages he received before the injury which caused disability. [3] '[T]he right to compensation is not lost or diminished by the injured employee's return to work at the same or a different wage than that theretofore earned by him. The statute does not require a showing of loss of earning power as a prerequisite to the payment of compensation for a permanent disability, but, on the contrary, provides for the payment in installments of a fixed and definite sum of money therefor.' (*Postal Tel-Cable Co.* v. *Industrial Acc. Com.* (1931), 213 Cal. 544, 550 [3 P.2d 6]; see also *Frankfort General Ins. Co.* v. *Pillsbury* (1916), 173 Cal. 56, 58 [159 P. 150]; *Mercury Aviation Co.* v. *Industrial Acc. Com.* (1921)186 Cal. 375, 377 [199 P. 508]; *Department of Motor Vehicles* v. *Industrial Acc. Com.* (1939), 14 Cal.2d 189,

191, 194 [93 P.2d 131].)" (*Smith* v. *Industrial Acc. Com.*, 44 Cal.2d 364, 367 [282 P.2d 64].)

Thus here Lewis is entitled to some fixed and definite sum for actual permanent disability even if the injury herein did not preclude her from returning to her job. Nonetheless, the amount should be more in keeping with the realities of Lewis' injury. ▋ The rule that return to work or the ability to do so does not prevent the worker from being compensated for disability, does not mean that the ability to return to work is without evidentiary value in determining whether there is in fact disability in the first instance or the degree thereof. In other words, a returned worker may still be "disabled" within the meaning of the statute and the rating schedules. On the other hand, there may be no genuine disability and the evidence of actual physical conduct demonstrating physical ability of the worker may be part of the proof thereof. That proof could be in the form of return to work and the physical activity at work. This distinction takes added significance in view of the need to test the result for fairness and proportionality as required by *Hale* v. *Morgan, supra*, 22 Cal.3d 388. Treatment of the evidence of ability to return to work under the 1931 language of *Postal Tel. Cable Co.* v. *Industrial Acc. Com., supra*, 213 Cal.544, must be reexamined in the light of *Hale* v. *Morgan, supra*. The language of *Postal Tel. Cable* should be restricted to its proper application and not extended to require that all evidence of return to work be ignored.

There was no evidence that in the future, because of this injury, Lewis will always be unable to work unless she has a job where she can sit at least half of the time. This is the error of the rater ascribing to the language of the independent medical examiner's report the conclusion that this requires a classification of semisedentary work as a restriction for all time.

The award is annulled; the order of the Board is reversed and the matter remanded to the Workers' Compensation Appeals Board with directions to grant reconsideration.

Roth, P. J., and Fleming, J., concurred.

Respondents' petitions for a hearing by the Supreme Court were denied February 15, 1980. Bird, C. J., was of the opinion that the petitions should be granted.