**Glen A. BOOTH, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of the Social Security Administration, Defendant.**

**No. CV 00–10088–AJW.**

United States District Court,
C.D. California,
Western Division.

Jan. 22, 2002.

Lawrence D. Rohlfing, Lawrence D. Rohlfing Law offices, Santa Fe Springs, CA, for plaintiff.

Carla A. Ford, AUSA, Office of U.S. Atty., Civ. Div., Los Angeles, CA, for defendant.

## MEMORANDUM OF DECISION

WISTRICH, United States Magistrate Judge.

Plaintiff filed this action seeking reversal of the decision of the defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits and supplemental security income benefits. Plaintiff filed a motion for summary judgment seeking a remand for an award of benefits or, in the alternative, a remand for further proceedings. The Commissioner filed a motion for remand, arguing that although the ALJ failed to make a proper credibility finding, the appropriate remedy was a remand for additional proceedings rather than an award of benefits.

### Administrative Proceedings

Plaintiff filed applications for disability insurance benefits and supplemental security income benefits on February 3, 1997, alleging that he has been disabled since May 2, 1993, due to sleep apnea, asthma, bronchitis, severe back problems, carpal tunnel syndrome, leg pain, and swelling. [Administrative Record ("AR") 68–75]. Plaintiff's applications were denied initially and upon reconsideration. [AR 55–67]. Plaintiff requested an administrative hearing, which was conducted before Administrative Law Judge Richard L. Leopold (the "ALJ") in August 1998. [AR 39–41]. Plaintiff was represented during the hearing by his attorney, Barbara Gedanki, and testified on his own behalf. [AR 39–54].

On February 10, 1999, the ALJ issued a written decision denying plaintiff's applications for benefits. [AR 15–22]. The ALJ found that plaintiff had severe obesity, adequately controlled sleep apnea, a history of asthma, mild degenerative disc disease affecting his upper and lower back, early chronic obstructive pulmonary disease, chronic left ankle pain due to an Achilles tendon rupture and fracture of the ankle in 1990, and residual pain in the left upper extremity due to a gunshot wound to the left elbow in 1970. [AR 21]. The ALJ determined that plaintiff's impairments, singly or in combination, did not meet or equal an impairment included in the Listing of Impairments. [AR 21]. See 20 C.F.R. Pt. 404, Subpt. P,App. 1. The ALJ further found that plaintiff retained the residual functional capacity to perform sedentary work, and therefore that plaintiff lacked the residual functional capacity to perform his light past relevant work as a bus driver. [AR 21–22]. Based on Rule 201.28 of the Medical–Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, the ALJ concluded that plaintiff was "not disabled" at any time through the date of his decision. [AR 20, 22]. The Appeals Council denied plaintiff's request for review. [AR 4–5.]

### Background

Plaintiff was born in 1958, and he was forty years old when the ALJ issued his decision. [AR 46, 68]. Plaintiff graduated from college with a degree in recreation administration. [AR 46]. Plaintiff last worked as a bus driver. He said that he was terminated in May 1993 after a long-term disability. [AR 46, 68].

Plaintiff testified that he could not work on account of sleep apnea and pain, swelling, and numbness in his neck, back, shoulders, arms, hands, legs, knees, and heels. [AR 47, 51]. Plaintiff said that he took pain medication, and that the medication helped for a short period of time "when I load up on it," but that side effects from his medication combined with sleep apnea made his life "discomforting and misera-

ble." [AR 47]. Plaintiff was separated and lived alone, although his children were with him "off and on." [AR 47]. During a normal day, plaintiff did "nothing." [AR 48]. He said that he managed to put his own clothes on, but that doing so was painful. [AR 48–49]. Plaintiff prepared his own meals, although "it's got to where sometimes it may be sandwiches." [AR 48]. Plaintiff explained that he fell asleep during activities such as watching television, reading, visiting, and attending church, embarrassing himself and discomfiting others. [AR 38, 51]. Plaintiff said that he could not walk more than a block, that he "tossed and turned" when he sat down, and that he could stand "very little" due to pain. [AR 49]. Lifting and carrying were "[t]oo painful in the hands and the elbows." [AR 49].

Upon examination by his attorney, plaintiff testified that he weighed between 387 and 397 pounds, and that he had weighed over 335 pounds since December 1996. [AR 50].[1] He said that his doctors had told him to lose weight, but that he had not been able to do so. [AR 50]. Plaintiff said that he had been involved in more than thirty motor vehicle accidents, and that his medical condition and resulting problems had caused a great deal of turmoil and stress. [AR 52–53].

### Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or if it is based on the application of incorrect legal standards. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir.2001); *Tackett v. Apfel*, 180 F.3d 1094, 1097–1098 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401,

91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Tackett*, 180 F.3d at 1098. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401, 91 S.Ct. 1420 (quoting *Consolidated Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). The court is required to review the record as a whole, and to consider evidence detracting from the decision as well as evidence supporting the decision. *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir.1999).

### Plaintiff's Contentions

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ did not properly assess the opinion of treating physician Elena Robert, M.D. [Plaintiff's Memorandum at 3–7], and (2) the ALJ erred in rejecting plaintiff's testimony regarding the severity of his pain and other symptoms. [Plaintiff's Memorandum at 8–10]. Because the Commissioner agrees that the ALJ's credibility assessment was inadequate [*see* Defendant's Memorandum at 2], the issues in dispute are the ALJ's evaluation of Dr. Robert's opinion and the proper remedy.

### Discussion

### Elena Robert, M.D.

Dr. Robert, a board-certified specialist in physical medicine and rehabilitation, evaluated plaintiff in June 1993 in connection with a workers' compensation claim for injuries plaintiff sustained in a collision which occurred while he was driving a bus. [AR 149–166]. Based on a history, physical examination, and nerve conduction velocity studies, Dr. Robert's impressions were musculoligamentous injury of the

---

1. The record indicates that plaintiff is about six feet, two inches tall. [*See, e.g.*, AR 133, 185, 209, 294, 315].

cervical and lumbar spine with suspected L4 radiculopathy, right brachial plexopathy, and bilateral carpal tunnel syndrome. [AR 164]. Dr. Robert recommended that plaintiff remain under the care of his treating physician, Dr. Mitchell, for physical therapy, and she suggested that strengthening exercises and a wrist splint might help alleviate plaintiff's symptoms. [AR 165]. Dr. Robert noted that Dr. Mitchell had placed plaintiff on temporary total disability until July 1, 1993, but she expressed no opinion about his ability to work. [AR 155; see AR 138]. No return appointment was scheduled, and no treatment was provided. [AR 165].

Dr. Robert examined plaintiff again in August and September 1993 and completed an "Attending Physician's Supplemental or Final Report" following each visit. [AR 141–148]. Her impressions were unchanged, except that she noted the results of an MRI conducted on August 31, 1993. [AR 142]. The MRI showed

> degenerative cervical spondylosis with varying degrees of disc protrusions. There is encroachment on the subarachnoid space at several levels, but not on the cervical cord, per se. There is mild compromise on the right fifth nerve root at C4–5, in its exit foramina.

[AR 142; see AR 147–148]. Dr. Robert prescribed a course of physical therapy, but no medication. [AR 144]. Dr. Robert opined that plaintiff was temporarily totally disabled through October 1993. [AR 138, 141, 144].[2]

Dr Robert rendered her final opinion and report on October 28, 1993. [AR 132–149]. In her final report, Dr. Robert opined that plaintiff's condition was permanent and stationary. [AR 138].[3] She concluded that plaintiff was permanently precluded from engaging in his usual occupation as a bus operator, and that he was limited to "light to moderate work" due to pain in his spine that radiated into his right upper and lower extremities. [AR 138–139]. Dr. Robert described plaintiff's upper back pain as "constant slight to moderate ... radiating to the right shoulder/upper extremity, becoming moderate to severe with lifting, holding the head and neck in a fixed position for prolonged periods of time, stressful pushing and pulling and repetitive head and neck movements." [AR 138–139]. She described his low back pain as "constant slight to moderate ... radiating into the right lower extremity, becoming moderate to severe with lifting, bending, stooping, stressful pushing and pulling and prolonged sitting and standing." [AR 139]. Dr. Robert recommended future treatment consisting of orthopedic follow-up, physical therapy, diagnostic testing, a laminectomy of the cervical and lumbar spine, and appropriate medication. [AR 139]. Noting that plaintiff had a history of "sleep amnesia," she

---

**2.** The term "temporarily totally disabled" means that an individual is "totally incapacitated" and "unable to earn any income during the period when he is recovering from the effects of the injury." *Rissetto v. Plumbers & Steamfitters Local 343,* 94 F.3d 597, 600, 605 (9th Cir.1996) (internal quotation marks and citations omitted); see also Cal. Labor Code § 4653. A period of temporary total disability "is that period when the employee is totally incapacitated for work and during which he may reasonably be expected to be cured or materially improved with proper medical attention." *W.M. Lyles Co. v. Workmen's Comp.*

*Appeals Bd.,* 3 Cal.App.3d 132, 136, 82 Cal. Rptr. 891 (1969) (citation omitted).

**3.** A disability is considered "permanent and stationary" for workers' compensation purposes "after the employee has reached maximum medical improvement or his or her condition has been stationary for a reasonable period of time." *Gangwish v. Workers' Comp. Appeals Bd.,* 89 Cal.App.4th 1284, 1289 n. 7, 108 Cal.Rptr.2d 1 (2001) (quoting Cal.Code Regs. tit. 8, § 10152).

also advised plaintiff to consult a neurologist. [AR 139].

Plaintiff contends that the ALJ failed adequately to assess Dr. Robert's opinion, particularly her assessment of plaintiff's subjective symptoms. Plaintiff also contends that Dr. Robert's opinion establishes that he is disabled. [*See* Plaintiff's Memorandum at 3–7]. Defendant, on the other hand, contends that Dr. Robert's opinion is consistent with the ALJ's finding that plaintiff can perform sedentary work. [*See* Defendant's Memorandum at 3–4].

The ALJ discussed treatment reports from Los Angeles West Medical Group ("Los Angeles West"), the facility with which Dr. Robert was affiliated. [*See* AR 17, 132–166].[4] His decision cites some of Dr. Robert's findings and her conclusion that plaintiff can perform "light to moderate level work activity." [AR 17]. The ALJ, however, did not explain how he interpreted or weighed Dr. Robert's disability opinion, which was couched in California workers' compensation terminology. Nothing in the ALJ's decision demonstrates that he adequately considered the distinction between the workers' compensation rubric utilized by Dr. Robert and the scheme used to assess disability under the Commissioner's regulations. In this case, the ALJ's decision suggests that he took Dr. Robert's opinion that plaintiff could perform "light work" at face value for purposes of evaluating plaintiff's Social Security disability claim.[5] A careful analysis of the ALJ's decision and Dr. Robert's opinion illustrates the defects of that approach.

Workers' compensation disability ratings are not controlling in disability cases decided under the Social Security Act, and the terms of art used in the California workers' compensation guidelines are not equivalent to Social Security disability terminology. *See Macri v. Chater*, 93 F.3d 540, 544 (9th Cir.1996); *Desrosiers v. Secretary of Health & Human Services*, 846 F.2d 573, 576 (9th Cir.1988); *see also Coria v. Heckler*, 750 F.2d 245, 247 (3rd Cir.1984) ("The ALJ correctly noted that there are different statutory tests for disability under workers' compensation statutes and under the Social Security Act."); 20 C.F.R. §§ 404.1504, 416.904. Under the California workers' compensation guidelines, for example, a claimant who cannot perform "heavy" work

> may be capable of performing "light," "semi-sedentary," or "sedentary" work. None of these three categories, however, is based on strength. Rather, they turn

4. The ALJ's evaluation of the Los Angeles West reports is confusing because the ALJ seems to have relied, in part, on treatment records from an unrelated medical facility. [*See* AR 17]. In his decision, the ALJ states that plaintiff was "treated at the Los Angeles West Medical Group from June 1993 through October 1993." [AR 17]. He then cited and discussed treatment reports that are part of Exhibit 3F, which consists of records dated December 1993 through August 1994 from Mulliken Medical Centers ("Mulliken"), another medical facility where plaintiff sought treatment. [*See* AR 17, 167–211]. The ALJ then discussed reports from Los Angeles West, which were marked as Exhibit 2F. [*See* AR 17, 132–166].

5. The ALJ apparently concluded (or simply assumed) that Dr. Robert's opinion supported his residual functional capacity assessment. The ALJ discussed the reports from Los Angeles West along with other evidence that he considered to be consistent with his conclusions, such as the treatment reports from Mulliken [AR 17] and records from Friendly Hills Medical Center and the Los Angeles County Sheriff's Department. [AR 18]. The ALJ distinguished that evidence from the reports of two treating physicians, Drs. Perry and Crowder, whose opinions he expressly rejected after providing a statement of his reasons for giving those opinions "little, if any, weight." [*See* AR 18–19].

on whether a claimant sits, stands, or walks for most of the day. Each entails a "minimum of demands for physical effort." The categories of work under the Social Security disability scheme are measured quite differently. They are differentiated primarily by step increases in lifting capacities.

*Desrosiers,* 846 F.2d at 576 (internal citation omitted); *see also Glass v. Workers' Comp. Appeals Bd.,* 105 Cal.App.3d 297, 302 n. 1, 164 Cal.Rptr. 312 (1980) (quoting and discussing the "Schedule for Rating Permanent Disabilities Under Provisions of the Labor Code of the State of California" (the "Schedule")).[6]

■ Notwithstanding these and other differences, the ALJ may not disregard a physician's medical opinion simply because it was initially elicited in a state workers' compensation proceeding, or because it is couched in the terminology used in such proceedings. *Coria,* 750 F.2d at 247–248 (holding that by failing to consider medical reports submitted in state workers' compensation proceeding the ALJ failed to weigh all of the evidence of record); *cf. Lester v. Chater,* 81 F.3d 821, 832 (9th Cir.1995) (holding that the ALJ erred in rejecting a physician's reports because they "were clearly obtained by the claimant's attorney for the purpose of litigation," and stating that "[t]he purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them"). Instead, the ALJ must evaluate medical opinions couched in state workers' compensation terminology just as he or she would evaluate any other medical opinion. *See Coria,* 750 F.2d at 247–248 (explaining that because of the differences between state workers' compensation and federal social security tests for determining disability, "the ALJ could reasonably disregard so much of the physicians' reports as set forth their conclusions as to [the plaintiff's] disability for worker's compensation purposes," but also explaining that "the ALJ should evaluate the objective medical findings set forth in the medical reports for submission with the worker's compensation claim by the same standards that s/he uses to evaluate medical findings in reports made in the first instance for the Social Security claim"); *Packer v. Apfel,* 1999 WL 14668, at *5 (E.D.N.Y.1999) (noting that while the treating physicians' opinions that the plaintiff was disabled for workers' compensation purposes were not determinative of the question whether the plaintiff was disabled under the Social Security Act, the ALJ nonetheless was obliged to explain his rejection of those opinions in accordance with the Social Security regulations, and holding that the ALJ in that case erred in failing to do so); *Bosley v. Shalala,* 879 F.Supp. 296, 304 (W.D.N.Y.1995) (stating that "the ALJ was not entitled to ... disregard, or

6. The Schedule was revised effective April 1, 1997. *See* Administrative Director, Department of Industrial Relations, Division of Workers' Compensation, State of California, "Schedule for Rating Permanent Disabilities" (April 1, 1997) (the "Revised Schedule"). The Revised Schedule states that it is effective for injuries sustained on and after April 1, 1997. *See* Revised Schedule, note foll. title page. Prior to its revision, the Schedule's "Guidelines for Work Capacity" defined work capacity in terms of a preclusion against "very heavy lifting," "very heavy work," "heavy lifting," "repeated bending and stooping," or " heavy work," or in terms of a limitation to "light work," "semi-sedentary work," or "sedentary work". *See Glass,* 105 Cal.App.3d at 302 n. 1, 164 Cal.Rptr. 312. The Revised Schedule defines all of those terms without substantive change, and includes two additional categories of work capacity: a "disability precluding repetitive motions of neck or back," and a "disability precluding substantial work". See Revised Schedule at 2–14—2–15.

neglect to articulate reasons for rejecting, either the opinions or the objective medical findings contained in" a treating physician's reports, even though those reports were prepared for a workers' compensation case) (citations omitted). Proper evaluation of such medical opinions, however, does present an extra challenge. The ALJ must "translate" terms of art contained in such medical opinions into the corresponding Social Security terminology in order to accurately assess the implications of those opinions for the Social Security disability determination. *See Desrosiers*, 846 F.2d at 576 ("The categories of work under the Social Security disability scheme are measured quite differently than under the California worker's compensation scheme. It is clear from the record that the ALJ did not adequately consider this distinction."). While the ALJ's decision need not contain an explicit "translation," it should at least indicate that the ALJ recognized the differences between the relevant state workers' compensation terminology, on the one hand, and the relevant Social Security disability terminology, on the other hand, and took those differences into account in evaluating the medical evidence.

■ In analyzing medical opinions using state workers' compensation terminology, the ALJ "is entitled to draw inferences 'logically flowing from the evidence.'" *Macri*, 93 F.3d at 544 (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)); *see, e.g., Macri*, 93 F.3d at 544 (holding that the ALJ reasonably inferred that a worker who had "lost approximately half of his pre-injury capacity for lifting, bending and stooping" under the California workers' compensation guidelines, and whose prior job required lifting forty pounds occasionally, twenty-five pounds frequently, and constant bending, could perform light work under the Commission-er's regulations); *Desrosiers*, 846 F.2d at 576 (holding that a treating physician's opinion that the claimant was limited to sedentary work as defined by the Commissioner was not contradicted by the opinions of two examining physicians who found the claimant incapable of "heavy" work under the California workers' compensation guidelines); *Carpenter v. Apfel*, 2000 WL 973681 at *3–*4 (N.D.Cal.2000) (holding that the opinion of an examining physician that the claimant had "lost some capacity for lifting and bending, and was precluded from any heavy lifting" under the California workers' compensation guidelines supported the ALJ's finding that the claimant could perform light work); *Perez v. Chater*, 17 F.Supp.2d 1115, 1124–1125 (C.D.Cal.1997) (holding that where the ALJ adopted one conclusion expressed by a workers' compensation agreed medical examiner, the ALJ was required to explain why he did not accept that physician's opinion as to the claimant's functional limitations and temporary total disability); *Payan v. Chater*, 959 F.Supp. 1197, 1203 (C.D.Cal.1996) (holding that the ALJ properly found that a claimant who was precluded from "heavy lifting" under the workers' compensation guidelines, and whose past work required lifting one hundred pounds occasionally and fifty pounds frequently, walking and standing for eight hours per day, and constant bending and reaching, could perform medium work as defined by the Commissioner). The ALJ's decision, however, should explain the basis for any material inference the ALJ has drawn from those opinions so that meaningful judicial review will be facilitated.

Dr. Robert opined that plaintiff had a capacity for "light to moderate" work, indicating that at most, plaintiff can perform work "in a standing or walking position, with a minimum of demand for physical effort." [AR 138]. However, Dr. Robert

also stated that plaintiff's pain would be constant and "moderate to severe" with lifting or "prolonged sitting or standing." [AR 138–139]. Under the California workers' compensation guidelines, a disability may be rated by using a "work capacity" index or a "subjective factor" index, and the final rating is based on the index yielding the higher (that is, more restrictive) rating. *See, e.g., Glass*, 105 Cal.App.3d at 299–300, 164 Cal.Rptr. 312; Revised Schedule at 1–7—1–14 & 2–15 nn. 1–5. In workers' compensation parlance, a "disability resulting in a limitation to light work" due to spine and torso impairments "contemplates the individual can do work in a standing or walking position, with a minimum of demand for physical effort," and corresponds to a fifty percent "standard rating." *See Glass*, 105 Cal.App.3d at 302 n. 1, 164 Cal.Rptr. 312 (quoting the Schedule); *see also* Revised Schedule at 2–15.[7] A subjective factor index of "constant moderate pain" signifies pain that "could be tolerated, but would cause marked handicap in the performance of the activity precipitating the pain." Cal.Code Regs. tit. 8, § 9727 [8]; *see also* Revised Schedule at 2–14—2–15 (providing that a rating of "constant moderate pain" corresponds to a standard rating of fifty percent). Plaintiff argues that the ALJ should have found plaintiff disabled based on Dr. Robert's assessment of his subjective symptoms,

particularly her conclusion that plaintiff would experience "moderate to severe pain" with "prolonged sitting or standing." [Plaintiff's Memorandum at 5].

Plaintiff's argument has some merit. Although the ALJ did not expressly "translate" Dr. Robert's findings into Social Security terms, the ALJ's reasoning can be deduced to some extent from his findings. Since the ALJ found that plaintiff is limited to sedentary work as defined by the Commissioner, he did not adopt Dr. Robert's opinion that plaintiff has the capacity to perform work primarily in a standing or walking position. Plaintiff obviously does not dispute that aspect of the ALJ's decision. For workers' compensation purposes, however, the work capacity index and the subjective factor index are distinct. Dr. Robert also opined that plaintiff would suffer constant moderate to severe pain with prolonged sitting. Dr. Robert, however, did not define what she meant by "prolonged" sitting, and that term is not defined in the Schedule. Notably, the Schedule defines two levels of disability that are more restrictive than a limitation to "light" work: (1) a limitation to "semi-sedentary work," which "contemplates the individual can do work approximately one-half the time in a sitting position, and approximately one-half the time

---

**7.** "The standard rating represents the degree of disability for a theoretical average worker, i.e., a worker with average occupational demands on all parts of the body and at the average age of 39." Revised Schedule at 1–5; *see also Universal City Studios, Inc. v. Worker's Comp. Appeals Bd.*, 99 Cal.App.3d 647, 653 n. 3, 662–663, 160 Cal.Rptr. 597 (1979). The standard rating, modified in various respects, is one factor used in the complex scheme for rating permanent disability under the California workers' compensation guidelines. *See Universal City Studios, Inc.*, 99 Cal.App.3d at 662–663, 160 Cal.Rptr. 597; Revised Schedule at 1–1—1–14.

**8.** The regulations define the levels of pain as follows: (1) "severe" pain would preclude the activity precipitating the pain, (2) "moderate" pain could be tolerated, but would cause marked handicap in the performance of the activity precipitating the pain, (3) "slight" pain could be tolerated, but would cause some handicap in the performance of the activity precipitating the pain, and (4) "minimal" or "mild" pain would constitute an annoyance, but would cause no handicap in the performance of the particular activity, and would be considered a nonrateable permanent disability. Cal.Code Regs. tit. 8, § 9727.

in a standing or walking position, with a minimum of demands for physical effort whether standing, walking or sitting" and (2) "sedentary work," which "contemplates the individual can do work predominantly in a sitting position at a bench, desk or table with a minimum of demands for physical effort and with some degree of walking and standing being permitted." *Glass*, 105 Cal.App.3d at 302 n. 1, 164 Cal.Rptr. 312 (quoting the Schedule). It is logical to assume that Dr. Robert's reference to "prolonged" sitting means sitting at least half of the work day; otherwise, the sitting restriction would not add measurably to the disability rating. If that assumption is correct, then Dr. Robert's opinion indicates that plaintiff also would suffer constant moderate to severe pain when performing sedentary work as defined by the Commissioner, since sedentary work requires about six hours of sitting during an eight-hour work day. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a); Social Security Ruling ("SSR") 96–9p, 1996 WL 374185, at *3. Leaving the workers' compensation guidelines aside, it would be difficult to argue convincingly that sitting for six hours during an eight-hour day does not qualify as "prolonged" sitting. Thus, Dr. Robert's opinion indicates that at a minimum, plaintiff would suffer constant pain of a severity that can be tolerated but that would result in a "marked" handicap in the performance of sedentary jobs. In the alternative, it could be interpreted as indicating that plaintiff may suffer constant pain of such severity that it would preclude the performance of sedentary jobs altogether. The ALJ did not adequately analyze or weigh that aspect of Dr. Robert's opinion, as he was required to do. *See generally Lester*, 81 F.3d at 830–831 (articulating the standards for weighing the opinions of treating and examining physicians).

Contrary to plaintiff's contention, however, the ALJ was not required to give Dr. Robert's opinion controlling weight, and her opinion does not conclusively establish that plaintiff is entitled to benefits. According to her own report, Dr. Robert initially saw plaintiff in June 1993 only for evaluation, not for treatment. [AR 165]. When Dr. Robert re-evaluated plaintiff in August and September 1993, she prescribed treatment in the form of two four-week courses of physical therapy. [AR 143–146]. Her treatment of plaintiff ended in October 1993, when she issued her final report. [AR 132–140]. Given the difficulty of "translating" her opinion into Social Security terms, however, the import of Dr. Robert's opinion was somewhat equivocal, and her opinion was controverted by other medical opinion evidence. [*See, e.g.,* AR 187, 300–301]. Accordingly, Dr. Robert's opinion is not entitled to controlling weight. *See Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir.2001). Rather, her opinion must be weighed in light of the following factors: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) the extent to which the medical opinion is supported by relevant evidence, especially medical signs and laboratory findings; (5) consistency of the opinion with the record as a whole; (6) specialization, when the medical issue is related to the area of specialty, and (7) other salient factors which tend to support or contradict the opinion. *See Edlund*, 253 F.3d at 1157 n. 6; 20 C.F.R. §§ 404.1527(d), 416.927(d). Even when a treating physician's opinion is contradicted by the opinion of another physician and is not entitled to controlling weight, it cannot be rejected without specific, legitimate reasons supported by substantial evidence in the record. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir.2001); *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.1998).

With respect to the first three factors, Dr. Robert initially saw plaintiff in June 1993 for evaluation only [AR165], and she saw him a total of four times during the period from June to October 1993. [AR 132–166]. Dr. Robert actually treated plaintiff only from August to October 1993. [AR 143–146]. Thus, her treatment of plaintiff began and ended less than six months after plaintiff's alleged onset of disability. Moreover, Dr. Robert's own reports suggest that her primary function was to evaluate plaintiff's disability status rather than to render treatment. [*See* AR 149–166]. Therefore, the first three factors do not strongly support her opinion. On the other hand, Dr. Robert's diagnoses are supported by her examination findings, and her opinion and findings were consistent with at least some of the other medical opinion evidence. [*See, e.g.*, AR 315–330, 336–342]. In addition, Dr. Robert is a specialist in physical and rehabilitative medicine. Thus, Dr. Robert's opinion was entitled to some deference, and her "subjective factor" disability rating should have been analyzed in conjunction with the other medical evidence of record to determine whether plaintiff was disabled for at least twelve consecutive months.

Because the ALJ did not adequately "translate" Dr. Robert's opinion into Social Security terms, and because he did not analyze her opinion in light of the relevant factors, the ALJ committed legal error.

**Remand for further proceedings or an award of benefits**

The ALJ erred in evaluating plaintiff's subjective symptom testimony and the opinion of Dr. Robert. The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion), *cert. denied*, 531 U.S. 1038, 121 S.Ct. 628, 148 L.Ed.2d 537 (2000). Remand is appropriate where additional proceedings would remedy defects in the ALJ's decision, *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir.1989), and where the Commissioner is in a better position to evaluate the evidence. *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir.1990). An award of benefits is appropriate where no useful purpose would be served by further administrative proceedings, *see Gamble v. Chater*, 68 F.3d 319, 322–323 (9th Cir.1995), where the record has been fully developed, *see Schneider v. Commissioner of the Social Security Administration*, 223 F.3d 968, 976 (9th Cir.2000); *Ramirez v. Shalala*, 8 F.3d 1449, 1455 (9th Cir.1993), or where remand would unnecessarily delay the receipt of benefits. *See Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir.1996).

The Ninth Circuit has adopted the following test, known as the "*Smolen* test," to determine whether evidence should be credited and the case remanded for an award of benefits:

"(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited."

*Harman*, 211 F.3d at 1178 (quoting *Smolen*, 80 F.3d at 1292) (footnote omitted). Where the test is satisfied with respect to the evidence in question, "then remand for determination and payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting" that evidence. *Harman*, 211

F.3d at 1179; *Varney v. Secretary of Health & Human Services,* 859 F.2d 1396 (9th Cir.1988). The *Smolen* test, however, "does not obscure the more general rule that the decision whether to remand for further proceedings turns upon the likely utility of such proceedings." *Harman,* 211 F.3d at 1179.

 In this case, a remand for further proceedings is the appropriate remedy. As discussed above, the ALJ did not properly "translate" and weigh Dr. Robert's opinion, but even if he had, her opinion does not automatically entitle plaintiff to an award of benefits. In addition, the Commissioner has acknowledged that the ALJ did not properly evaluate the credibility of plaintiff's subjective symptom testimony. Even if that testimony is credited, however, plaintiff is not necessarily entitled to benefits because there remains an issue that must be resolved before a determination of disability can be made. That issue is whether plaintiff has failed to comply with prescribed treatment that could alleviate his symptoms and restore his ability to work, such as use of the "BiPAP" or "CPAP" unit along with medications for his sleep apnea, the surgery and other interventions prescribed by Dr. Robert and other physicians for plaintiff's orthopedic problems, and the recommendations that plaintiff reduce his weight to control or eliminate his sleep apnea and breathing problems. [*See, e.g.,* AR 44, 139, 169, 171–172, 175, 185, 189, 191, 204, 242]. If not, then the ALJ must inquire whether plaintiff has shown "good cause" for his failure

to do so within the meaning of the regulations. *See generally* 20 C.F.R. §§ 404.1530, 416.930 (explaining the requirement that prescribed treatment be followed and the factors that may excuse a failure to do so); SSR 00–3P, 2000 WL 628049, at*9–*10 (explaining how the failure to follow prescribed treatment is evaluated with respect to obesity); SSR 96–7p, 1996 WL 374186, at *7–*8 (explaining that adjudicators must consider evidence that may explain a failure to seek treatment).[9]

### Conclusion

For the reasons stated above, the Commissioner's decision is not supported by substantial evidence and does not reflect the proper legal standards. Accordingly, plaintiff's motion for summary judgment is **granted in part**, defendant's motion for remand is **granted in part**, and this case is remanded to the Commissioner for further proceedings consistent with this memorandum of decision.

**IT IS SO ORDERED.**

---

9. The Ninth Circuit has held that where a claimant's obesity has caused or contributed to an impairment, the Commissioner cannot deny disability benefits based on the claimant's failure to comply with weight-loss recommendations unless the Commissioner first finds that the claimant's obesity is "reasonably remediable" considering the claimant's overall medical condition and personal factors. *See Dodrill v. Shalala,* 12 F.3d 915, 919 (9th Cir.1993); *Hammock v. Bowen,* 879 F.2d 498, 503–504 (9th Cir.1989) (en banc). If it is not "reasonably remediable," then the claimant's obesity must be considered as a factor contributing to the claimant's disability. *See Dodrill,* 12 F.3d at 919 (citing *Hammock,* 879 F.2d at 504); *see also* SSR 00–3P, 2000 WL 628049 (discussing the evaluation of obesity in disability claims).